WABASH POWER EQUIPMENT COMPANY, Plaintiff-Appellant, v. IN-
TERNATIONAL INSURANCE COMPANY, Defendant-Appellee.

First District (5th Division)   No. 1—88—0010

Opinion filed June 16, 1989.

Altheimer & Gray, of Chicago (Lionel G. Gross and Michael K. Sweig, of counsel), for appellant.

James S. Stickles, Jr., and Mark S. Ollmann, both of Crotty & Hoyne, of Chicago, for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Plaintiff Wabash Power Equipment Company (Wabash) appeals from an order of the circuit court of Cook County dismissing its declaratory judgment action against defendant International Insurance Company (International), which sought a determination that International was required to indemnify it under the policy issued to it by International for the loss of theft of a boiler and auxiliary equipment. In dismissing the action, the trial court found that Wabash failed to file its complaint within one year from the date of loss as required by the terms of its policy. On appeal, Wabash argues that the court erred in applying the statute of limitations period provided in section 143.1 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.1), rather than the general statute of limitations period for written contracts as provided by section 13—206 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—206). Wabash further contends that the date of *discovery* of its loss, rather than the *actual date* of loss should control in computing the timeliness of filing its action and, accordingly, the court erred in applying the latter. For the reasons set

forth below, we affirm.

In 1975 Wabash purchased the boiler and auxiliary equipment at issue here. It subsequently dismantled the boiler and placed it and the auxiliary equipment in storage at a railroad yard leased to it and located near St. Petersburg, Florida. Unbeknownst to Wabash, the boiler and equipment were stolen from the railroad yard in 1985 during the months of March and April. Wabash did not learn of the theft until July 1986. On July 8, 1986, Wabash gave notice of the loss to International and also notified the local police of the theft. Wabash then commenced an extensive investigation to learn the identities of all persons responsible for the theft and, after acquiring sufficient information, filed a proof of loss with International on August 8. On October 7, International sent a letter to Wabash declining coverage. On November 21, Wabash filed a complaint for declaratory judgment. The complaint was dismissed without prejudice on June 4, 1987, pursuant to the motion of International. A second amended complaint filed by Wabash was similarly dismissed on December 3, 1987, and this appeal followed.

The policy at issue here contains two separate contractual limitation periods—one for fire and the other for theft. The fire section provides:

> "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

The theft section provides:

> "No suit on this policy shall be valid unless the insured has complied with all policy requirements and the suit is commenced within one (1) year (*unless a longer period is provided by applicable statute*):
> a. following the date of loss \*\*\*." (Emphasis added.)

The policy also requires Wabash to "[g]ive notice to the police when a theft is *discovered*." (Emphasis added.)

In dismissing Wabash's action for failure to file suit within one year, the trial court held that the tolling statute extending the contractual limitation period contained in section 143.1 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.1) was the "applicable statute" referred to in the theft section of Wabash's policy. That statute provides:

> "Whenever any policy or contract for insurance \*\*\* contains a provision limiting the period within which the insured may

bring suit, the running of such period is tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part." Ill. Rev. Stat. 1985, ch. 73, par. 755.1.

■ Wabash, on the other hand, asserts that since section 143.1 would also apply to the fire limitation period by operation of law, the "applicable statute" referred to in the theft clause must be something *other* than section 143.1, *i.e.*, section 13—206 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—206), which provides:

"Ten-year limitation. *** [A]ctions on *** written contracts *** shall be commenced within 10 years next after the cause of action accrued ***."

More specifically, Wabash reasons that "[i]f International had intended *both* limitation periods to have the same meaning, *i.e.* that the time for filing suit under either limitation period would end on the same date, then, presumably, it would have drafted the 'theft period' exactly the same way, or perhaps, it would have used only *one* limitation period to cover all losses covered by the policy, whether or not the loss for fire *or* theft. Certainly, if International had intended the running of the 'theft period' to end one year from the inception of the loss, it would either have used the 'inception of loss' language, which is unqualifiedly restrictive, or it *would not have included* the exculpatory and exceptional phrase *'unless* a longer period is provided by applicable statute.' " (Emphasis in original.) Accordingly, Wabash contends that the "applicable statute" language is ambiguous because it is susceptible of different constructions and must be construed against International. See *State Farm Mutual Automobile Insurance Co. v. Byrne* (1987), 156 Ill. App. 3d 1098, 510 N.E.2d 131 (ambiguous insurance policy provisions are to be construed against an insurer and in favor of the insured).

In response, Wabash, relying on *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875, argues that the fire provision does not contain the parenthetical language used in the theft provision because it was required to conform the fire limitation provision to the one in the "Standard Fire Policy" promulgated by the Director of Insurance and, therefore, it was precluded from modifying that provision. Wabash counters that *Stofer* "did not hold that the one-year period in the Standard Fire Policy in Illinois must be endorsed in all policies 'without modification.' "

■ In *Stofer*, the plaintiffs challenged the authority of the Director of Insurance to "prescribe uniform insurance contracts (*including contractual limitations on the time within which suits may be*

*brought against the insurer by the insured*)." (Emphasis added.) (68 Ill. 2d at 365.) The Director had promulgated Rule 23.01, which prescribed a standard fire and lightning insurance policy and *prohibited the making, issuance, and delivery of insurance contracts and policies which did not conform to the standard policy.* The standard policy provision which was incorporated in the plaintiffs' contracts of fire insurance was identical to the one in the instant case. The *Stofer* court subsequently held "that the legislature may delegate to the Director the power to prescribe a uniform insurance contract containing a clause limiting the time during which actions may be brought by the insured against his insurer." 68 Ill. 2d at 369.

In the instant case, Wabash contends that because the *Stofer* court's holding does not contain language specifically prohibiting modification of the one-year limitation period, then modification of the provision was possible and International could have so done. We find Wabash's reasoning without merit. In upholding the Director's authority to promulgate the specific fire provision at issue in *Stofer*, like the identical one contained in the policy here, the court pointed out that the legislative purpose underlying the Director's authority to promulgate a uniform basic policy was to prevent chaotic proliferation of *disparate* fire insurance policies. Moreover, the *Stofer* court specifically stated that although the plaintiffs there claimed "that the legislature did not delegate to the Director of Insurance the power to prescribe the time limit at issue here [Rule 23.01—"twelve months next after inception of the loss"], their "contention does not withstand scrutiny of the history of Rule 23.01 and its counterparts in other jurisdictions." (68 Ill. 2d at 367.) We further observe that Rule 23.01 provides:

> "Section 1. *** The purpose of this Rule is to implement Section 397 of the Illinois Insurance Code.
>
> Section 2. *** This rule shall apply to *all policy forms* on file with the Department on or after November 1, 1975, as well as *all policy forms* filed after that date.
>
> Section 3. The printed form of policy together with optional first page thereof attached hereto and filed herewith *** is hereby designated as the Standard Policy for fire and lightning insurance of the State of Illinois. *All policies or contracts of such insurance issued or delivered by an insurer subject to the provisions of the Illinois Insurance Code *** shall conform to such form of Standard Policy ***."* (Emphasis added.) (Illinois Insurance Department Official Regulations & Credit Bulletins, art. XXIII (National Insurance Law Service, 1983).)

In light of the specific language of Rule 23.01, it is clear that any fire insurance policy issued was to conform to the standard policy containing the uniform "twelve months next after inception of loss" limitation period promulgated by the Director and, we note, any change of that provision could only be made by the Director or the legislature. We further observe that the Director possesses the authority to discontinue any inconsistent policies. Accordingly, although the *Stofer* court did not specifically include language in its holding that the time limitation provision could not be modified, Rule 23.01, requiring the conformity of fire policies issued in Illinois with the standard policy created by the Director, would automatically preclude modification. We therefore find that no ambiguity exists in the present policy solely because of the differently worded limitation period provisions for commencing suit.

■■ ■ We also note that where there is a specific statutory provision and a general one, either in the same or another act which relates to the same subject that the specific provision relates to, the specific provision should be applied. (*United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34, 380 N.E.2d 909.) Here, section 143.1 is a specific limitation provision, relative to insurance contracts, lengthening the time within which to file suit by tolling the time from the date of proof of loss until the date the claim is denied by an insurer, whereas section 13—206 is a general statute of limitations for all written contracts which confers no rights and is merely a procedural bar to the remedy of breach of contract (see *Flemming v. Yeazel* (1942), 379 Ill. 343, 40 N.E.2d 507). Section 143.1 in effect *does* lengthen the time for filing suit, notwithstanding that it is a much shorter time than section 13—206, and therefore it qualifies as the "applicable statute" referred to in the policy. Accordingly, we find that the trial court correctly applied section 143.1 in determining the timeliness of the filing of Wabash's suit.

We briefly note that the authorities of other jurisdictions relied on by Wabash in support of its argument that the "applicable statute" language refers to a State's general statute of limitations on written contracts are inapplicable to the case before us. (See *Queen Tufting Co. v. Fireman's Fund Insurance Co.* (1977), 239 Ga. 843, 239 S.E.2d 27; *General Instrument Corp. v. American Home Assurance Co.* (E.D. Penn. 1975), 397 F. Supp. 1074; *Bargaintown, D.C., Inc. v. Bellefonte Insurance Co.* (1981), 54 N.Y.2d 700, 426 N.E.2d 469, 442 N.Y.S.2d 975.) In *Queen Tufting* and *General Instrument*, the courts ruled that their general statutes of limitations on written contracts were the "applicable statutes" referred to in the policies involved, but

only after satisfying themselves that there was no specific State statute directed at limitation clauses of insurance policies. Here, as discussed above, section 143.1 is a specific statute relating to insurance contracts. The fact that it applies by operation of law certainly does not affect its status as an "applicable statute" extending the limitation period. Wabash's reliance on *Bargaintown* is also misplaced since it cites to the dissent therein, which has no precedential value.

On the other hand, we find the *Bargaintown* majority opinion instructive on this issue, in which the court stated:

> "The court will not read the clause 'unless a longer period of time is provided by applicable statute' as manifesting an intent to import the six-year Statute of Limitations applicable to contract actions in general when to do so would necessarily be to ascribe to the parties an intention to include a wholly meaningless reference to a one-year period of limitation." (54 N.Y.2d at 701, 426 N.E.2d at 470, 442 N.Y.S.2d at 476.)

(See also *Bass v. Standard Accident Insurance Co.* (4th Cir. 1934), 70 F.2d 86 (where an insurance policy contained a clause stating that if the contractual time limitation for filing suit was at variance with any specific statutory provision in relation thereto, then the statutory provision would supersede the contractual limitation, the court held that a general statute of limitations would not qualify as a specific statutory provision because otherwise the contractual limit would be void in every State which has a general statute of limitations).) Here, we similarly find that if we were to accept Wabash's interpretation of "applicable statute" to refer to the general statute of limitations, it would render the contractual one-year limitation period meaningless, which would be contrary to the well-settled rule that in construing a contract it is presumed that all provisions were inserted for a purpose. See *Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 464 N.E.2d 292.

■ Wabash's next argument is that even if section 13—206 does not apply, its action nonetheless was timely filed because it was filed within one year of the date of discovery of its loss. Specifically, Wabash contends that since a contractual limitation period begins to run at the time the insured's right to commence suit accrues (see 20A J. Appleman, Insurance Law & Practice §11611 (1980)), "[w]here the policy, like the one in suit, requires the insured to notify the police upon the discovery of a loss by theft, and to furnish proof of loss prior to the commencement of suit, the insured's cause of action *cannot possibly accrue* until the insured has *the opportunity* to perform those conditions precedent to litigation. The limitations period starts

to run from that date." (Emphasis in original.) In other words, Wabash argues that because these condition precedents must be satisfied before commencing suit and compliance therewith could not be performed until it *discovered* its loss, the policy language requiring that suit be commenced within one year following the *date of loss* must mean *the date of discovery of the loss*, rather than the date of inception or actual date of loss. See *Johnson v. Humboldt Insurance Co.* (1878), 91 Ill. 92 (inception of loss ordinarily means date of loss).

We find Wabash's reasoning without merit because it fails to recognize that the condition precedents could have been satisfied had it discovered the theft within sufficient time after its occurrence, which it could have done had it practiced periodic checks on the status of its property. We conclude therefore that Wabash's argument is nothing more than an attempt to place the consequences of its failure to police its property on International. See *Naghten v. Maryland Casualty Co.* (1964), 47 Ill. App. 2d 74, 197 N.E.2d 489 (case implies that an insured has an affirmative burden to diligently investigate any potential loss and to determine in a timely fashion if a loss has occurred which is compensable under its insurance policy).

Moreover, Illinois courts have refused to adopt a date of discovery rule in regard to the time limits of policies of this nature for filing suits to recover for losses covered thereby. (See *Wilson v. Indiana Insurance Co.* (1986), 150 Ill. App. 3d 669, 502 N.E.2d 69 (loss resulting from damage to home); *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223 (loss resulting from damage to painting); *Naghten v. Maryland Casualty Co.* (1964), 47 Ill. App. 2d 74, 197 N.E.2d 489 (loss resulting from latent condition in cement floor of insured's home); *Sager Glove Corp. v. Aetna Insurance Co.* (7th Cir. 1963), 317 F.2d 439 (loss resulting from successive acts of vandalism).) Specifically, in *Sager*, the court rejected the plaintiff's theory that the limitation period for filing suit did not begin to run until the loss was discovered, stating:

> "We have found no Illinois cases where the phrase involved here—'twelve months next after inception of the loss'—has been discussed as to losses from vandalism or malicious mischief. It is our conclusion that the meaning of the phrase is quite clear. *It has nothing to do with the state of mind of the insured. It deals with an objective fact which in the context of this case is a specific act of vandalism or malicious mischief. The loss occurs and has its 'inception' whether or not the insured knows of it.*" (Emphasis added.) (317 F.2d at 440-41.)

In *Naghten*, this court followed *Sager*, stating:

> "We feel, as did the court in the Sager case, that the determination of the time of the loss cannot be left to the insured. The insurance company has certain investigative procedures, which must be brought to bear on a particular loss if they are to remain in business. If plaintiff's interpretation should be followed, there would be no time limitation between the occurrence of the damage and the time for filing the suit. The only determining factor would be the date on which the proof of loss was filed. An insurance company would be greatly prejudiced.
>
> \*\*\*
>
> \*\*\* *Taking inception in its most favorable interpretation for plaintiff, this suit was not brought within twelve months of the occurrence.*" (Emphasis added.) (*Naghten*, 47 Ill. App. 2d at 79-80.)

In *Florsheim*, even though the court did not find it necessary to determine the date of loss but relied on the date the plaintiff discovered her loss, which was more than one year prior to the filing of her suit, the court stated:

> "It has been well established in Illinois for nearly a century that the period of limitations runs from the date of loss \*\*\*." (*Florsheim*, 75 Ill. App. 3d at 308.)

In light of the foregoing, we therefore reject Wabash's urging that we follow *Olsen Marine Supplies of Norfolk, Inc. v. Fidelity-Phoenix Fire Insurance Co.* (S.D.N.Y. 1950), 94 F. Supp. 726, which held, contrary to existing Illinois case law, that the statutory period for bringing an action began to run from the date of the plaintiff's discovery of its loss. (See also *Wilson v. Indiana Insurance Co.* (1986), 150 Ill. App. 3d 669, 502 N.E.2d 69 (court declined to follow *Olsen Marine Supplies*).) We further briefly observe that in any event *Olsen Marine Supplies* is distinguishable from the case before us. There, the plaintiff could not determine if it had suffered the loss of a plane until it could actually discover if it had crashed. Here, Wabash could have discovered the theft earlier had it but periodically policed its property.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PINCHAM and COCCIA, JJ., concur.