**AMERICAN ALLIANCE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**IARW INSURANCE COMPANY, LIMITED, Defendant–Appellant.**

**No. 98–2323.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1998.

Decided Jan. 12, 1999.

John J. Piegore (argued), Mary E. Haeger, Kiesler & Bermand, Chicago, IL, for plaintiff-appellee.

Joel S. Siegel (argued), Horvath & Lieber, Chicago, IL, for Defendant-appellant.

Before FLAUM, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Interstate Warehousing, Inc., had two policies of insurance. One, issued by American Alliance, covered injury to property in Interstate's care; the other, issued by IARW, covered any legal liability Interstate incurred as a warehouseman or bailee. Each claimed to be excess to any other insurance for the same risk. According to the complaint filed in this battle between the insurers, on December 9, 1994, "a portion of the racking system in the Interstate Warehouse collapsed, after a forklift collided with it, causing damage to" property Oscar Mayer & Co. stored there. American Alliance indemnified Interstate and filed this action, under the diversity jurisdiction, seeking contribution from IARW. The district court granted summary judgment to American Alliance, ordering IARW to chip in approximately $94,000. 1998 U.S. Dist. LEXIS 6249, 1998 WL 214708 (N.D.Ill.1998).

Illinois, whose law governs this dispute, treats multiple excess policies as primary and requires each insurer to participate in indemnification, and an insurer that pays may recover contribution from an insurer that has not. *U.S. Fidelity & Guaranty Co. v. Alliance Syndicate Inc.*, 286 Ill.App.3d 417, 221 Ill.Dec. 757, 676 N.E.2d 278 (1st Dist.1997); *Jensen v. New Amsterdam Insurance Co.*, 65 Ill.App.2d 407, 213 N.E.2d 141 (2d Dist.1965). See also *Home Insurance Co. v. Certain Underwriters at Lloyd's London*, 729 F.2d 1132 (7th Cir.1984) (Illinois law). IARW contends that this principle is irrelevant because its policy does not cover the same risk as American Alliance's. According to IARW, it covered liability to third parties, while American Alliance provided first-party property-damage coverage. This

difference potentially matters if there were some reason why, despite its duties as a bailee, Interstate would not have been liable to Oscar Mayer. IARW grumbles that it has been "compelled to make a substantial payment under its liability policy before there has been any judicial determination of negligence or legal liability on the part of Interstate, or any opportunity by IARW to defend or settle the Oscar Mayer claim." Yet this suit offered IARW that opportunity. American Alliance contends that the policies provided overlapping coverage; all IARW had to do was ask the district court to determine whether this is correct. Having failed to do so, IARW is in no position to complain that it lacked an opportunity to show that its policy did not cover the loss.

Illinois permits the insured to elect which insurer is to handle a claim and thereby foreclose a settling insurer from obtaining contribution. *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill.App.3d 70, 175 Ill.Dec. 297, 599 N.E.2d 1311 (1st Dist.1992). (It is not clear *why* Illinois has this rule, but the parties agree that the rule exists.) As IARW sees things, Interstate chose American Alliance and thus ended the possibility of contribution. But the district judge sensibly found otherwise. Interstate informed IARW of the loss; on May 18, 1995, IARW's attorney replied stating that, because the IARW policy provided that any other insurance would be primary, American Alliance was obligated to pay the full loss. Making the best it could of this flat (and erroneous) refusal, Interstate turned to American Alliance. In *Hartford Fire* the insured expressly disclaimed recovery on a particular policy; here, by contrast, it was the insurer that failed to assist its insured. Nothing in *Hartford Fire* (or elsewhere in Illinois law) permits an insurer to treat an insured's response to a wrongful denial of coverage as an "election" that lets the insurer off the hook entirely.

IARW's remaining defense depends on this clause of its policy:

No suit, action or proceeding for the recovery of any claim ... shall be sustainable in any court of law or equity unless ... commended [sic] within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim. Provided, however, that if by the laws of the state within which this Policy is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such state to be fixed herein.

The "occurrence" took place on December 9, 1994, and Interstate discovered the loss immediately. American Alliance filed this suit on June 13, 1997, more than a year later—but less than two years after September 14, 1995, the date it paid Interstate's claim. Two years from payment is the time given by state law for contribution actions among insurers. 735 ILCS 5/13–204. If this statute governs then the suit is timely, but Illinois permits contracts to alter the time for action. *Wood v. Allstate Insurance Co.*, 21 F.3d 741, 743 (7th Cir.1994) (Illinois law); *Wilson v. Indiana Insurance Co.*, 150 Ill. App.3d 669, 103 Ill.Dec. 922, 502 N.E.2d 69 (4th Dist.1986). IARW insists that American Alliance therefore had to sue by December 9, 1995. American Alliance sought contribution from IARW before then, but it negotiated until July 11, 1996, when IARW communicated a definitive refusal to pay. Allowing December 9, 1995, to pass without filing suit was American Alliance's undoing, IARW submits.

Courts of Illinois have never addressed the question whether a time limit in an insurance policy applies to contribution suits between insurers. Courts elsewhere do not agree on the appropriate rule:

[O]ne theory would treat the co-insurer's claim as a subrogation action and require that it be filed within the same one-year limitation applicable to a suit by the insured. The second theory would view the contribution claim as an independent cause of action which does not accrue until the parties seeking reimbursement makes [sic] payment to the damaged parties. According to the second theory, such a claim is timely made if filed within two years of the payment by the co-insurer, as long as the insured had an enforceable claim against the contributor at the time of the payment.

*United Pacific Insurance Co. v. Sequoia Insurance Co.,* 1991 U.S. Dist. LEXIS 14346, 1991 WL 539973 at *3 (N.D.Cal. Sept. 24, 1991). See also *Great American West, Inc. v. Safeco Insurance Co.,* 226 Cal.App.3d 1145, 277 Cal.Rptr. 349 (4th Dist.1991) (collecting authority). Our district court thought that Illinois is likely to take the second approach. We're not sure that Illinois would take *either* approach, and not simply because subrogation (a suit on the contract) differs from contribution (a suit in the nature of equitable restitution).

■■■ A period of limitations set by contract binds only the parties to the contract—here, IARW and its insured Interstate. How can an agreement between IARW and Interstate curtail the rights of American Alliance? It would take a great deal of struggle to depict American Alliance as a third-party beneficiary of the IARW–Interstate contract, and therefore as bound by its limitations. Oscar Mayer, not American Alliance, is the third-party beneficiary of IARW's promise to indemnify Interstate. By conceiving of contribution among insurers as an opportunity for the paying insurer to step into the shoes of the victim (and thus the third-party beneficiary) Illinois might make the IARW–Interstate contract relevant; but Illinois does not treat an insurer in American Alliance's position as successor to Oscar Mayer's rights, if only because it is not a direct-action state and the victim therefore does not have rights directly against the insurer. No, in Illinois, contribution among insurers is a restitutionary action governed by common-law principles, see *Dixon v. Chicago & Northwestern Transportation Co.,* 151 Ill.2d 108, 118–19, 176 Ill.Dec. 6, 601 N.E.2d 704 (1992), which implies that Illinois would permit an insurer in American Alliance's position to sue within two years of payment, no matter when American Alliance itself paid.

■■■ But we are confident that Illinois would not adopt the first approach (treating contribution identically to subrogation), and American Alliance prevails under any other approach. For American Alliance did pay while Interstate still had an enforceable claim against IARW under the one-year period—which actually lasted longer than a year,

because it was tolled between Interstate's notice to IARW and the insurer's refusal to pay the claim. 215 ILCS 5/143.1. IARW does not point to anything in Illinois law—statutes, regulations, or cases—that implies support for the contribution = subrogation approach. For that matter, IARW does not cite or discuss any of the cases that adopt this approach, or discuss the courts' reasons for doing so. None leaps to mind, and adopting it would allow claims for contribution to be barred before they accrue. Insurers that wrongfully reject their insureds' claims (as IARW did) could use the delay this process creates to fend off contribution claims by insurers that honor their obligations. The upshot would be much the same as if IARW's policy really were excess to American Alliance's; yet the premise with which we started is that Illinois treats both policies as primary. The district court's resolution, which puts the two policies on the same plane, is

AFFIRMED.