UNITED TECHNOLOGIES AUTO-
MOTIVE SYSTEMS, INC., et
al., Appellants–Plaintiffs,

v.

AFFILIATED FM INS. CO., et al.,
Appellants–Defendants.

No. 49A05–9903–CV–132.

Court of Appeals of Indiana.

March 7, 2000.

George M. Plews, Donna C. Marron, Michael W. Skorupka, Plews Shadley Racher & Braun, Indianapolis, Indiana, Neil R. Brendel, Keith A. Fabi, Julie V. Stanier, Kirkpatrick & Lockhart, L.L.P. Pittsburgh, Pennsylvania, Attorneys for Appellants.

Edward Hannon, Harrison & Moberly, Indianapolis, Indiana, Mel I. Dickstein, Richard W. Bale, Robins Kaplan Miller & Ciresi, L.L.P., Minneapolis, Minnesota, Attorneys for Appellee Affiliated FM Insurance Company.

## OPINION

BROOK, Judge

### Case Summary

Appellant-plaintiff United Technologies Automotive Systems, Inc. ("UTAS") brought a declaratory judgment and breach of contract action against its insurer, appellee-defendant Affiliated FM Insurance Company ("Affiliated FM"), seeking coverage under its insurance policy for damages resulting from environmental contamination. The trial court granted summary judgment in favor of Affiliated FM, and UTAS appeals.

We affirm.

### Issues

UTAS presents several issues for our review, but we find the following to be dispositive: whether UTAS's claims are barred as a matter of law by the insurance policy's suit limitation provision.

### Facts and Procedural History[1]

UTAS is a diversified company that manufactures products for automotive industry customers in several states, including Indiana. The company was created when United Technologies Corporation acquired Sheller–Globe Corporation ("Sheller–Globe") from Trace International Holdings, Inc. in 1988. Sheller–Globe was renamed UTAS in 1991.

Prior to this acquisition, Affiliated FM had issued a first-party property insurance policy to Sheller–Globe that insured against "all risks of direct physical loss to the property covered from any external cause . . . except as hereinafter excluded." The policy was effective from December 1, 1971, to December 1, 1974, and covered losses occurring at the former Superior Coach Plant in Lima, Ohio. The policy also contained the following suit limitation provision:

> **Suit Against the Company:** No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy, nor unless commenced within twelve (12) months next after the happening of the loss,[2] unless a longer period of time is provided by applicable statute.

In 1980, Congress began enacting various statutes, including the Comprehensive

---

1. Oral argument in this case was heard in Indianapolis on February 21, 2000. We extend our appreciation to counsel for the quality of their advocacy.

2. The policy does not define "happening of the loss."

Environmental Response, Compensation and Liability Act ("CERCLA"),[3] to impose liability for and prompt cleanup of hazardous waste sites. Thereafter, the U.S. Environmental Protection Agency ("EPA") and other governmental and private entities initiated administrative proceedings against UTAS to require cleanup of environmental contamination that had occurred at several of its facilities. In particular, the soil and groundwater at the Superior Coach Plant were contaminated with volatile and semi-volatile organic compounds and heavy metals. The EPA conducted a screening inspection of the Superior Coach Plant in 1989 and a follow-up inspection in 1995. The MetoKote Corporation conducted further investigations of the facility in the "early 1990s" and ultimately commenced a lawsuit against UTAS under CERCLA that was settled in 1995.

UTAS first advised Affiliated FM of the environmental contamination, resulting inspections, and its claim for insurance coverage when it filed its complaint for declaratory judgment and breach of contract on May 21, 1998. After filing its answer and affirmative defenses, Affiliated FM filed a motion for summary judgment on August 28, 1998, contending that UTAS's claims were barred because its policy with Affiliated FM had expired twenty-four years previously, and alternatively, that UTAS had failed to comply with certain policy conditions prior to filing suit. The trial court heard oral argument and entered summary judgment in favor of Affiliated FM on February 9, 1999.

### Discussion and Decision

### I. Standard of Review

Our standard of review in summary judgment cases is the same as that of the trial court: summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Brunner v. Economy Preferred Ins. Co.,*
597 N.E.2d 1317, 1318 (Ind.Ct.App.1992); Ind. Trial Rule 56(C). In reviewing an entry of summary judgment, we do not weigh the evidence but rather, consider the facts in the light most favorable to the nonmoving party. *Daugherty v. Fuller Engineering Serv. Corp.,* 615 N.E.2d 476, 479 (Ind.Ct.App.1993), *trans. denied.* Additionally, we may not look beyond the evidence specifically designated to the trial court. *Birrell v. Indiana Auto Sales & Repair,* 698 N.E.2d 6, 7 (Ind.Ct.App.1998), *trans. denied.* A trial court's grant of summary judgment is "clothed with the presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. *Id.*

In Indiana, contracts for insurance are generally subject to the rules of interpretation applicable to other contracts. *Eli Lilly & Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985). As such, if the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* To apply the rules of construction favoring the non-drafter of insurance contract terms, the language must be ambiguous or of doubtful meaning. *Id.* An insurance policy is ambiguous only if reasonable persons may honestly differ as to the meaning of its language. *Id.* Under such circumstances, the policy should be so construed as to effectuate indemnification rather than to defeat it. *Masonic Accident Ins. Co. v. Jackson,* 200 Ind. 472, 482, 164 N.E. 628, 631 (1929). Finally, terms in an insurance contract may not be construed in a manner which is repugnant to the purposes of the policy as a whole. *Property Owners Ins. Co. v. Hack,* 559 N.E.2d 396, 402 n. 5 (Ind.Ct. App.1990). The reasonable expectations and purpose of the ordinary businessman when making an ordinary business contract must be honored. *Id.* at 402.

### II. Suit Limitation Provision

The suit limitation provision at issue here requires that a suit or action on the policy be commenced "within twelve

---

3. *See* 42 U.S.C. § 9601 *et seq.*

(12) months next after the happening of the loss, unless a longer period of time is provided by applicable statute." UTAS urges that summary judgment was inappropriate because the twelve-month limitation did not bar its claim for insurance coverage in light of the longer time period provided by Indiana's general statute of limitations governing written contracts.[4] It claims in the alternative that the phrase "happening of the loss" is ambiguous in the context of progressive environmental loss cases and should have been construed in favor of coverage to mean "after the completion of the loss," that is, when the environmental contamination was stopped by remediation.

Affiliated FM, on the other hand, takes no position on whether the "happening of the loss" language refers to the beginning, the duration, or the completion of an environmental progressive loss. Rather, it argues that the clear and unambiguous terms of the insurance policy provided coverage only for losses occurring within the policy period from December 1, 1971, to December 1, 1974. Put another way, Affiliated FM contends that any losses occurring after the expiration of the policy would not be covered, and that the trial court did not have to determine the meaning of "happening of the loss" in order to properly grant summary judgment in its favor.

■ We must agree with Affiliated FM's position. "It is a time-honored principle that the insurer's obligation to pay is contingent on a covered loss occurring during the policy period." *7 Couch on Insurance 3d*, § 102:2 at 102–9 (1997). The time period covered by a policy is a basic element of determining the risk covered by the policy. *Id.*, § 102:1 at 102–5. Moreover, it is well settled that a provision in an insurance policy that limits the time in which a suit may be brought to a period less than that fixed by the statute of limitations is binding, unless it contravenes a statute or public policy. *Brunner*, 597 N.E.2d at 1318. Provisions limiting actions on an insurance policy to twelve months have been upheld as valid and enforceable; consequently, actions on a policy that are brought after the expiration of such limitation periods will be barred. *Id.*

■ In applying these principles to the particular facts of this case, even if the "happening of the loss" had occurred on the latest possible date of coverage (i.e., December 1, 1974), claims brought by UTAS on May 21, 1998 would be barred. Specifically, had the trial court applied a twenty-year general statute of limitations,[5] UTAS's environmental loss would have had to occur no earlier than May 21, 1978. If the trial court were to apply the twelve-

4. *See* IND.CODE § 34–11–2–11, which reads in relevant part: "an action upon contracts in writing ... entered before September 1, 1982 ... must be commenced within twenty (20) years after the cause of action accrues."

5. Affiliated FM also argues that the longer time period provided by an "applicable statute" cannot be read to incorporate a general statute of limitations for breach of contract actions because this interpretation would render the one-year provision a nullity. We agree. *See Meridian Mut. Ins. Co. v. Caveletto*, 553 N.E.2d 1269, 1271 (Ind.Ct.App.1990) (holding that general ten-year statute of limitations applicable to contract actions does not conflict with contractual clause requiring the filing of an action within one year of loss); *Lumpkins v. Grange Mut. Cos.*, 553 N.E.2d 871, 872 (Ind.Ct.App.1990) (holding that general ten-year statute of limitations applicable

to contract actions controls only in absence of a contractual provision adopting different period of limitation); *see also Wabash Power Equipment Co. v. International Ins. Co.*, 184 Ill.App.3d 838, 133 Ill.Dec. 94, 540 N.E.2d 960, 964 (1989) (concluding that "applicable statute" cannot reasonably refer to a general statute of limitations for contract actions because the one-year period would be rendered meaningless and such interpretation would violate the rule of construction that all provisions be given effect); *Bargaintown, D.C., Inc. v. Bellefonte Ins. Co.*, 54 N.Y.2d 700, 702, 442 N.Y.S.2d 975, 976, 426 N.E.2d 469, 470 (1981) (concluding that "applicable statute" will not be read to impose general six-year statute of limitations applicable to contracts when to do so would necessarily ascribe to parties an intention to include a wholly meaningless reference to a one-year period of limitation).

month limitation, the loss would have had to occur no earlier than May 21, 1997. Regardless of which limitation period is used, UTAS's insurance policy with Affiliated FM and the suit limitation provision contained therein had long expired by the time UTAS filed suit.

In addition, we note that Indiana courts have followed the reasoning of the vast majority of state courts in holding that failure to discover damages does not toll the contractual period of limitation; rather, a policy's period of limitation begins to run at the time the loss occurs, regardless of whether the insured knew of it. *Id.* at 1319 (holding that building owner who was unaware of hail damage to roof until seventeen months after damage had occurred was nevertheless barred by twelve-month suit limitation provision; his failure to discover loss until some time after it occurred was immaterial); *see also Burress v. Indiana Farmers Mut. Ins. Group,* 626 N.E.2d 501, 504 (Ind.Ct.App. 1993) (holding that the one-year suit limitation ran from the date the cracks in the ground first formed, as opposed to when the homeowner became aware through experts that the cracks were caused by mine subsidence), *trans. denied.* Our courts have done so because to conclude otherwise would thwart the very purposes of suit limitation provisions: to guarantee that the insurer's investigative rights are not prejudiced and to promote certainty and hasten the resolution of stale claims. *Brunner,* 597 N.E.2d at 1319; *Lumpkins v. Grange Mut. Cos.,* 553 N.E.2d 871, 874 (Ind.Ct.App.1990).

Having consistently declined to adopt a "discovery" rule in insurance coverage cases, we reject UTAS's contention that "[p]olicyholders reasonably expect [their] coverage to extend to property damage which 'happens' during the policy period even if it is not discovered, investigated, and remedied until after that period has expired." Nevertheless, even if we were to interpret the suit limitation provision at issue here to mean "twelve months after the [discovery] of the loss," UTAS would still be barred as a matter of law from bringing its suit against Affiliated FM. The undisputed designated evidence reflects that the EPA conducted its first on-site inspection of the Superior Coach Plant in 1989, that MetoKote Corporation conducted further inspections in the "early 1990s," and that a lawsuit under CERCLA was settled in 1995. Giving UTAS every benefit of the doubt, it "discovered" a loss arising from environmental contamination when it settled the CERCLA case in 1995; accordingly, its lawsuit filed on May 21, 1998, three years later, was too late.

In sum, we conclude that UTAS's action on its policy with Affiliated FM was brought after the expiration of the policy's suit limitation period and was therefore barred as a matter of law. Affiliated FM was entitled to summary judgment on UTAS's untimely suit.

Affirmed.

NAJAM, J., and ROBB, J., concur.