DIAL CORPORATION, Plaintiff-Appellant, v. MARINE OFFICE OF AMERICA *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—99—1191

Opinion filed January 12, 2001.—Rehearing denied February 22, 2001.

Robert A. Egan, P.C., of Chicago (Robert A. Egan and Brian C. Thomas, of counsel), for appellant.

Belgrade & O'Donnell, P.C., of Chicago (Steven B. Belgrade, George M. Velcich, and Richard P. Girzadas, of counsel), for appellee.

PRESIDING JUSTICE QUINN delivered the opinion of the court:
Plaintiff, Dial Corporation (Dial), filed a complaint for declaratory judgment against defendants, Marine Office of America Corp. (Marine) and Eagle Rigging, Inc. (Eagle), seeking a determination as to whether Marine, as insurer, owed a duty to indemnify Eagle, its insured, in an underlying suit. Dial appeals from the circuit court's order granting Marine's motion to dismiss pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1996)) and contends that: (1) the circuit court erred in failing to consider whether Dial had standing to pursue a declaratory judgment action against Marine before a determination of Eagle's liability had been made; (2) the circuit court erred in determining Dial's date of loss as the date of the accident rather than the date Eagle was found liable; and (3) the circuit court erred in applying the limitation language in Eagle's policy to Dial, a third-party claimant under the policy. For the reasons that follow, we affirm.

On June 7, 1988, Dial sustained damages to its blowmolding machine and a vertical building beam when Eagle, engaged in its duties as cartage operator, dropped the blowmolding machine while loading it onto a flatbed truck.

Eagle's insurance policy with Marine was effective from March 12, 1988, to March 12, 1989. The policy covered, among other items, Eagle's motor truck cargo for scheduled vehicles. The policy included the following provisions:

"A. Coverage
We will pay for 'loss' to covered property from any of the covered Causes of Loss.

1. Covered Property *** means property of others in transit under a tariff, bill of lading or shipping receipt. Transit must be via a 'Scheduled Vehicle.'
* * *

Causes of Loss Insured:
1) Damage to the property while it is being loaded on or unloaded from a vehicle or being hoisted or carried into a building or lowered or carried from a building."

Eagle's "Scheduled Vehicle" is listed on the declaration page of the insurance policy as a 1980 Kenworth tractor with an insurance limit of $100,000. The record does not disclose the vehicle on which the blowmolding machine was being loaded.

Eagle's insurance policy with Marine also contained the following suit limitation period:

"B. Legal Action Against Us:

No one may bring a legal action against us under this Coverage Part unless:

* * *

2. The action is brought within 2 years after you first have knowledge of the 'loss.'

* * *

F. Definitions

1. 'Loss' means accidental loss or damage."

Following the incident, Eagle notified Marine of Dial's claim for damages. In a letter dated November 15, 1988, Marine denied coverage under the insurance policy because Eagle used a forklift instead of the Kenworth tractor to transport the blowmolding machine. Marine further stated that Eagle was not acting in its capacity as a motor truck carrier when the incident occurred and that there were no shipping documents as required by the policy. Neither Eagle nor Marine filed a declaratory judgment action to determine whether Marine owed Eagle a duty to defend under the insurance policy.

Dial filed its original complaint against Eagle on May 7, 1993. The suit was voluntarily dismissed on April 17, 1997. Dial refiled suit one year later in April 1998 and alleged that Eagle negligently operated the forklift which proximately caused the damage to its property. Dial claimed damages, costs and expenses in excess of $100,000, in addition to damages for the loss of the use of the blowmolding machine during the repair period.

While the underlying action was still pending, Dial filed an amended complaint for declaratory judgment against Marine and Eagle on July 22, 1998. Dial contended that Marine had a duty and an obligation to pay for its damages.

Marine filed a motion to dismiss Dial's complaint for declaratory judgment on August 28, 1998. Marine stated that it had properly denied coverage because the insurance policy did not cover losses that occurred while property was loaded onto any vehicle that was not listed as a "scheduled vehicle." Marine also argued that pursuant to section 2—619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 1996)), Dial's complaint was not timely filed. Marine asserted that, under the insurance policy, any action had to be brought

within two years of knowledge of the loss. Since Dial filed its complaint more than two years after the accident and loss occurred, the suit was time-barred. Marine further argued that pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)), Dial, as the injured party, could not bring a direct action against the insurer based on the liability of the insured.

On September 24, 1998, the circuit court entered a default judgment against Eagle, finding it liable in the underlying action. On December 16, 1998, the circuit court granted Marine's motion to dismiss. The circuit court found that Dial's suit was not a direct action against Marine as the insurer because Dial did not seek to sue Marine directly for damages. Rather, the court found that Dial's suit was one to determine its rights under the policy. The court further found that Dial's suit was barred by the two-year suit limitations period contained in the insurance policy. The court stated: "The two-year bar implies [sic] to the insured and the *** contractual provision also applies to Dial Corporation." Dial filed a motion to reconsider on January 15, 1999. In denying Dial's motion for reconsideration, the court relied upon *Harvey Fruit Market, Inc. v. Hartford Insurance Co.*, 294 Ill. App. 3d 668, 691 N.E.2d 71 (1998), and found that the policy's suit limitations provision prevented the declaratory judgment action. Dial's timely appeal followed.

■ When ruling on a motion to dismiss under either section 2—615 or section 2—619 of the Code of Civil Procedure, the circuit court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. The court should grant the motion only if the plaintiff can prove no set of facts that would support a cause of action. *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 542, 582 N.E.2d 108 (1991). Because this process does not require the court to weigh facts or determine credibility, a reviewing court does not give a circuit court's judgment deference, but instead reviews the matter *de novo*. *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50 (1993).

Dial first contends that the circuit court erred in dismissing its declaratory judgment action because the court failed to consider whether Dial had standing to pursue declaratory relief against Marine before the determination of Eagle's liability. Dial urges this court to hold that it only had standing after it was determined that Eagle was liable for damages in the underlying suit because, until the liability determination, there was no actual controversy between Dial as the injured party and Marine. We disagree and find that Dial's arguments urging this court to find a lack of standing are unpersuasive. In examining the issue of standing, the law is clear that in order to have

standing to bring an action for declaratory relief there must be an actual controversy and the party seeking relief must possess a personal claim, status, or right capable of being affected. *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 362 N.E.2d 298 (1977).

Dial asserts that there was no actual controversy between Dial and Marine prior to the entry of the default judgment against Eagle. In support of its contention, Dial relies on *Weber v. St. Paul Fire & Marine Insurance, Co.*, 251 Ill. App. 3d 371, 622 N.E.2d 66 (1993). In *Weber*, the plaintiff brought a declaratory judgment action as executor of the estate of the deceased, who was a resident of a nursing home and died while in the care of the home. The plaintiff sought a declaration that the insurance policy issued by the defendant would provide coverage for the nursing home's exposure to treble damages under the Nursing Home Care Act (Ill. Rev. Stat. 1991, ch. 111½, par. 4153— 602). The defendant insurer did not challenge its duty to defend, but filed a motion to dismiss on the ground that the plaintiff did not have standing because the action was premature. The trial court found that the insurance policy would provide coverage for treble damages under the Nursing Home Care Act if such damages were awarded in the underlying tort action that the plaintiff filed against the nursing home. On appeal, the defendant insurance company argued that the trial court should have dismissed the complaint for declaratory relief for lack of an actual controversy. *Weber*, 251 Ill. App. 3d at 372.

The appellate court held that the use of the term "standing" in the case was misleading because the parties confused the issue of whether a party has sufficient stake in a justiciable controversy with whether an action is ripe for adjudication. *Weber*, 251 Ill. App. 3d at 373. The court stated that the defendant was actually challenging the ripeness of the issue, rather than the plaintiff's general standing to bring the declaratory judgment action. *Weber*, 251 Ill. App. 3d at 373. In reversing the circuit court's decision, this court held that, since the issue of liability had not been adjudicated and a judgment for treble damages had not yet been awarded, the issue of whether the policy provided coverage for the treble damages was not ripe for adjudication. *Weber*, 251 Ill. App. 3d at 373.

We find *Weber* to be inapposite. In *Weber*, the insurer had already agreed to defend the insured nursing home. In seeking a declaration that the insurer would be liable for any treble damages awarded by the jury, the plaintiff's request for relief was really in the nature of a request to determine the issue of indemnification.

Here, Dial's declaratory action sought a ruling on whether the Marine policy provided coverage. Marine had denied Eagle's request for coverage some five months after the accident. After Dial filed suit

against Eagle in May 1993, Dial subsequently dismissed the suit and refiled it in April 1998. Again, Marine did not provide a defense. Marine first appeared in connection with the case pursuant to being served with this declaratory judgment action in July 1998. There is no evidence in the record to indicate that Marine had notice of Dial's suit against Eagle prior to Marine being served with this declaratory action.

Dial argues that it had no standing to file an action against Marine prior to a finding of liability against Eagle. This argument is undermined by the fact that Dial filed its action against Marine more than two months before the trial court entered a finding of liability and a default judgment against Eagle. Dial's position is also undermined by the case law of our state.

In *Zurich Insurance Co. v. Baxter International, Inc.*, 173 Ill. 2d 235, 670 N.E.2d 664 (1996), and *Flashner Medical Partnership v. Marketing Management, Inc.*, 189 Ill. App. 3d 45, 545 N.E.2d 177 (1989), the tort claimants were found to be necessary parties in a declaratory judgment action between the insured tortfeasor and the insurer. In *Hapag-Lloyd (America), Inc. v. Home Insurance Co.*, 312 Ill. App. 3d 1087, 1094, 729 N.E.2d 36 (2000), this court stated: "It is Illinois public policy that underlying claimants have a substantial interest in how insurance questions are resolved. The Illinois Supreme Court found that 'this interest is best protected by having the claimants participate directly in the litigation between the insurance carrier and the insured, rather than by allowing the claimants to sue the carrier independently.' " *Hapag-Lloyd*, 312 Ill. App. 3d at 1094, quoting *Zurich Insurance Co. v. Baxter International, Inc.*, 173 Ill. 2d at 246; see also *Flashner Medical Parternship v. Marketing Management, Inc.*, 189 Ill. App. 3d at 53-54 (holding that tort claimants have a real and substantial interest in the outcome of the insurance coverage controversy because the coverage determination could eliminate a source of funds).

Here, neither Eagle nor Marine filed a declaratory action in connection with the underlying accident. This fact does not prevent Dial from having standing to bring a declaratory action.

*Reagor v. Travelers Insurance Co.*, 92 Ill. App. 3d 99, 415 N.E.2d 512 (1980), is on point. In *Reagor*, the plaintiff was paralyzed when he dove from a cliff into a lake and struck a sand bar. The lake had been created as a result of sand excavation performed by Dyer Construction Company (Dyer). The plaintiff filed a complaint for damages and named Dyer as one of the defendants. During discovery, the plaintiff learned that defendant Travelers Insurance Company (Travelers) had issued Dyer a liability insurance policy that was in effect at the time

of the accident. While the underlying complaint was pending, the plaintiff filed a complaint for declaratory judgment to determine coverage under the insurance policy Travelers issued to Dyer. Travelers filed a motion to dismiss on the ground that the plaintiff lacked standing to sue. The trial court granted Traveler's motion.

On appeal, this court specifically addressed whether the plaintiff, as the injured party, could bring the declaratory judgment action prior to the adjudication of liability in the underlying suit. In reversing the trial court's ruling, this court discussed standing and held that although Travelers and Dyer agreed that there was no coverage, there was a possibility that the plaintiff would look to Travelers for payment of any damages that might be awarded in the underlying tort action. Therefore, this court held that the plaintiff had standing as there was an actual controversy between the plaintiff and Travelers and that both of them were capable of being affected by a determination of the controversy. *Reagor*, 92 Ill. App. 3d at 102.

■ In *Pratt v. Protective Insurance Co.*, 250 Ill. App. 3d 612, 621 N.E.2d 187 (1993), this court cited *Reagor* for the proposition that "[a]n injured party may *always* bring a declaratory judgment action to determine a tortfeasor's coverage under an insurance policy." (Emphasis added.) *Pratt*, 250 Ill. App. 3d at 618. We do not read the holding in *Reagor* nearly so broadly. We note that the facts in *Pratt* were really quite different from those in *Reagor*. In *Pratt*, the insurer initially provided a defense for the tortfeasor. The insurer subsequently denied coverage and filed a declaratory action but later dismissed that action. The plaintiff obtained a judgment against the tortfeasor. After this, the plaintiff filed his own declaratory judgment action to determine the scope of the insurer's policy. The facts in *Pratt*, where the insurer provided a defense to the tortfeasor and his employer and the plaintiff obtained a judgment against the tortfeasor, who was arguably an insured of the insurer, provided much clearer bases for this court's holding that the plaintiff had standing to file a declaratory action than did the facts in *Reagor*.

We believe that the holding in *Reagor* that injured parties may bring a declaratory action should be limited to those cases where: (1) an injured party has filed suit against an insured tortfeasor; (2) the insurer of the tortfeasor has not provided a defense to its insured; and (3) neither the insured nor the insurer has filed a declaratory judgment action to determine the scope of the insurer's policy. This reading of *Reagor* is consistent with well-established principles of insurance law in Illinois.

■ This court recently reaffirmed the long-standing principle that the courts favor declaratory judgment actions on the issue of policy

coverage prior to adjudication of the underlying claim, especially when based on a denial of coverage. *Home Insurance Co. v. Hooper*, 294 Ill. App. 3d 626, 632, 691 N.E.2d 65 (1998), citing *Safeco Insurance Co. v. Brimie*, 163 Ill. App. 3d 200, 205, 516 N.E.2d 577 (1987).

However, a declaratory judgment action filed prior to a determination of liability in the underlying claim is only appropriate where the issues in the underlying suit are separable from those in the declaratory action. "[T]he test is whether collateral estoppel would operate. If the issues are substantially the same so that collateral estoppel would apply to control the resolution of issues in the underlying suit, declaratory judgment would be premature." *Illinois State Medical Insurance Services, Inc. v. Cichon*, 258 Ill. App. 3d 803, 807, 629 N.E.2d 822 (1994).

Finally, a restrictive reading of *Reagor* is consistent with the holding in *Zurich Insurance Co. v. Baxter International, Inc.*, 173 Ill. 2d 235, 670 N.E.2d 664 (1996), that underlying claimants' interests are best protected by having the claimants participate directly in the litigation between the insurance carrier and the insured, rather than by allowing claimants to sue the carrier independently. If there is no litigation between the insurance carrier and the insured, as here, the only protection available to the claimant may be the filing a declaratory action himself.

■ Here, the damage Dial sustained to its property as a result of Eagle's actions provided Dial with standing to bring suit for declaratory relief against Marine. The actual controversy stemmed from the coverage afforded under the insurance policy Marine provided to Eagle. As in *Reagor*, the claimant (Dial) filed suit against the insured tortfeasor (Eagle); the insurer (Marine) did not provide a defense; and neither Eagle nor Marine filed a declaratory action to determine the scope of Marine's policy. Looking at the facts alleged in the complaint for declaratory judgment, it can be seen that the issues in the complaint are not substantially the same as those in the underlying suit. It is really not contested that Eagle negligently damaged Dial's blow-molding machine. The only issues in the declaratory action are whether Eagle was using a covered vehicle and whether Dial filed this declaratory action in a timely manner. Consequently, collateral estoppel is not a concern. Therefore, we hold that, as the injured party, Dial had sufficient standing to enable it to bring a declaratory judgment action and to litigate the question of coverage under the insurance policy.

■ We next examine the date of loss with regard to the insurance policy. The language of the policy determines the time of loss and, therefore, the moment when the policy limitations begin to run. *Shelton v. Country Mutual Insurance Co.*, 161 Ill. App. 3d 652, 657, 515

N.E.2d 235 (1987). The policy at issue defines loss as "accidental loss or damage." Here, both Dial and Eagle were present when the damage occurred and were aware of the loss at the time of the accident, on June 7, 1988. As Dial was aware of the damage that had occurred, we find that the "date of loss" was June 7, 1988.

However, Dial urges this court to define the date of loss as the date the insured was determined liable, rather than the date of the accident. Marine responds that, in addition to the policy language, Illinois law holds that the date used for determining the date of loss is the date on which the actual physical loss of property occurred. *Harvey*, 294 Ill. App. 3d at 669. Dial attempts to distinguish *Harvey* on the basis of standing. Dial argues that, in *Harvey*, the plaintiff was the insured and therefore had standing to immediately bring suit against the insurer. As stated above, Dial had standing to bring a declaratory judgment action prior to the determination of liability in the underlying suit; therefore, this argument is unavailing.

Here, Dial's loss occurred on June 7, 1988, the date Eagle damaged Dial's property. If we were to accept Dial's assertion that the date of loss should be the date Eagle was found liable, this position would be the equivalent of adopting the discovery rule on damages. This position has been rejected by this court because to hold otherwise would allow the insured to determine the time of loss. *Wabash Power Equipment Co. v. International Insurance Co.*, 184 Ill. App. 3d 838, 845, 540 N.E.2d 960 (1989); *Harvey*, 294 Ill. App. 3d at 670. Dial's position is particularly untenable due to the fact that it was aware of its loss on June 7, 1988, but chose not to file suit against Eagle until May 1993. Dial subsequently dismissed this suit and refiled it in April 1998.

■ Marine asserts that the two-year suit limitations period contained in the insurance policy bars Dial's complaint for declaratory relief because it was filed more than two years after the date of loss. Marine relies on *Hermanson v. Country Mutual Insurance Co.*, 267 Ill. App. 3d 1031, 1034, 642 N.E.2d 857 (1994), and *Harvey Fruit Market, Inc. v. Hartford Insurance Co.*, 294 Ill. App. 3d 668, 669, 691 N.E.2d 71 (1998), for the well-established rule that an insurer has the right to set reasonable limitations periods in the policy.

■ We agree with Marine that such policy limitations periods are clearly enforceable against *insureds*. See *Smagala v. Owen*, 307 Ill. App. 3d 213, 217, 717 N.E.2d 491 (1999). However, neither party has cited any reported cases addressing the validity of such limitation periods against third parties who have been injured by an insured. This court's research has only turned up one case discussing the issue, *American Alliance Insurance Co. v. IARW Insurance Co.*, 165 F.3d 558,

561 (7th Cir. 1999). There, the Court of Appeals held that "[a] period of limitations set by contract binds only the parties to the contract." *American Alliance Insurance Co.*, 165 F.3d at 561. However, that case involved a contribution action between insurers. The Court of Appeals implied that an injured party could be treated as a third-party beneficiary of the policy which might then be bound by the policy limitations period. *American Alliance Insurance Co.*, 165 F.3d at 561.

While this issue is of great importance and must be decided some day, this is not the appropriate case to do so. While Dial failed to bring its action against Marine prior to the expiration of the two-year policy limitations period, it also failed to file its action within 10 years of its loss.

In the absence of a specific and clear provision limiting the period within which a suit must be filed, the 10-year statute of limitations for contract actions is applicable to actions based on insurance policies. *Employers Insurance v. Ehlco Liquidating Trust*, 309 Ill. App. 3d 730, 746, 723 N.E.2d 687 (1999); *Shelton*, 161 Ill. App. 3d at 656; *Murphy v. United States Fidelity & Guaranty Co.*, 120 Ill. App. 3d 282, 286-87, 458 N.E.2d 54 (1983).

Section 13—206 of the Code of Civil Procedure provides in relevant part: "[A]ctions on *** written contracts *** shall be commenced within 10 years next after the cause of action accrued." 735 ILCS 5/13—206 (West 1996). Dial's cause of action accrued on June 7, 1988, and it did not file suit against Marine until July 22, 1998. As more than 10 years had elapsed, we find that Dial's action was time-barred. As we rely on the 10-year statute of limitations and may affirm the trial court's ruling on any basis shown in the record (*Vanek v. Illinois Farmers Insurance Co.*, 268 Ill. App. 3d 731, 736, 644 N.E.2d 419 (1994)), we do not address whether the trial court was correct in enforcing the policy's two-year period of limitations.

We also note that the 10-year statute of limitations period is not tolled by operation of section 143.1 of the Illinois Insurance Code (215 ILCS 5/143.1 (West 1996)). That provision, tolling the running of a limitations period from the date proof of loss is filed until the date the claim is denied, applies only to limitation periods contained in the policy.

Accordingly, the judgment of the circuit court granting defendants' motion to dismiss Dial's complaint for declaratory relief is affirmed.

Affirmed.

HARTMAN and THEIS, JJ., concur.