NO. 4-01-0612

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

ERIK REDWOOD and JUDE REDWOOD, )  Appeal from 

Plaintiffs-Appellants, )  Circuit Court of

          v. )  Champaign County

JOSEPH LIERMAN; THE VILLAGE OF ST. )  No. 99LM243

JOSEPH; B.J. HACKLER; and )

JEFFREY VERCLER, )  Honorable

Defendants-Appellees. )  Holly F. Clemons,

                                   )  Judge Presiding.

____________________________________________________________

JUSTICE APPLETON delivered the opinion of the court:

Plaintiffs, Erik and Jude Redwood, filed an amend­ed complaint under section 1983 of the Civil Rights Act of 1871 (42 U.S.C. 
§
1983 (1994)), alleging that defendants took a van and its contents without a warrant and without due process of law.  Defendants are the Village of St. Joseph, Illinois (Village), as well as the Village mayor, B.J. Hackler, the Village attorney, Joseph Lierman, and a deputy sheriff of Champaign County, Jeffrey Vercler.  The trial court dismissed the amended complaint with prejudice pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2000)).  We affirm in part and reverse in part. 

I. BACKGROUND

A motion to dismiss under section 2-615 attacks the legal sufficiency of the complaint, whereas a motion to dismiss under section 2-619 admits the legal sufficiency of the complaint, but raises defects or defenses that negate the cause of action or refute crucial conclusions of law or fact that are unsupported by allegations of specific fact.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 484-86, 639 N.E.2d 1282, 1289-90 (1994); 
AG Farms, Inc. v. American Premier Underwriters, Inc.
, 296 Ill. App. 3d 684, 688, 695 N.E.2d 882, 886 (1998).  Motions to dismiss under either section admit all well-pleaded facts in the complaint together with all reasonable inferences that can be drawn from those facts in the plaintiff’s favor.  
Lawson v. City of Chicago
, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377, 1382 (1996).  Review of the dismissal is 
de
 
novo
.  
Lawson
, 278 Ill. App. 3d at 634, 662 N.E.2d at 1382.

With the foregoing principles in mind, we turn our attention to the well-pleaded facts in the amended complaint.  Plaintiffs owned a "business," Quality Contractors, which in turn owned a 1982 Ford Econoline van.  Plaintiffs had an absolute right to the immediate possession of the van.  On May 13, 1997, the van was parked on a driveway at Jude Redwood’s private residence at 505 East Sherman Street in the Village.  The van was up on blocks, and its front wheels had been removed, so that the brakes could be repaired.  

On October 9, 1990, the board of trustees of the Village adopted an ordinance entitled "Inoperable Motor Vehicles."  Village of St. Joseph Amended Ordinance, Title 6, Chapter 5, Inoperable Motor Vehicles (eff. October 9, 1990).  The ordinance was in force during the events that plaintiffs allege in their amended complaint.  In the ordinance, the mayor and the board declare "Inoperable Motor Vehicles" to be a nuisance in that such vehicles harbor disease and vermin, invite plundering, create a risk of fire, pose a danger to children and others, and inflict a "scenic blight," degrading the environment and diminishing land values.  The definition of an "Inoperable Motor Vehicle" includes a vehicle that for 14 days cannot be driven because of the removal of the engine, wheels, or other parts.  The definition excludes vehicles that are temporarily inoperable because repairs are under way, provided that the repairs are completed within 14 days.

Under the ordinance, any owner of an "Inoperable Motor Vehicle" and any owner or occupier of land on which such a vehicle sits must dispose of it, or enclose it within a building, within seven days after receiving a written notice from the village clerk to do so.  The notice must notify the recipient that he or she may request a hearing on the question of whether the vehicle is an "Inoperable Motor Vehicle" by submitting the request in writing to the board within seven days after the date of the notice.  A request for a hearing stays the enforcement of the ordinance, pending the hearing and a decision by the board.  

The owner of the vehicle or the owner or occupant of the land may apply for an extension of time by making a written request for a hearing.  When receiving an application for an extension of time, the board will grant an extension of not more than 30 days, if the applicant shows good cause for an extension and submits an affidavit that the "Inoperable Motor Vehicle" is being held for sale or expeditious repair.  "Expeditious repair" means that (1) the parts for repair have been ordered but are not yet available for installation for reasons beyond the owner's control, (2) the vehicle is scheduled to be repaired within 30 days, or (3) the vehicle is inoperable because of an accident and the owner is pursuing a claim for damages or is considering pursuing one.  

Section 6-5-6(A) of the ordinance, entitled "Towing," says that if the recipient fails to comply with the notice, the sheriff shall:

"cause the towing or removal of the Inoperable Motor Vehicle:  (1) from private property--seven days or thereafter following said notice to the owner of the vehicle and the owner or occupant of the premises where the vehicle is located, or (2) from public property--seven days or thereafter following notice to the owner of said vehicle."  Village of St. Joseph Amended Ordinance, Title 6, Chapter 5, Inoperable Motor Vehicles §6-5-6(A) (eff. October 9, 1990).

If, after a hearing, the board determines that the vehicle is an "Inoperable Motor Vehicle," the board will set a reasonable date by which the vehicle must be disposed of or enclosed.  The ordinance states:  

"In the event said vehicle is not disposed of or enclosed within a building by the said date set by the Board of Trustees, then the Champaign County Sheriff or deputy sheriff shall cause the towing or removal of the Inoperable Motor Vehicle without further, prior notice thereof."  Village of St. Joseph Amended Ordinance, Title 6, Chapter 5, Inoperable Motor Vehicles, §6-5-6(B) (eff. October 9, 1990).

On May 13, 1997, the village clerk served a notice upon Erik Redwood at the offices of Quality Contractors. The notice stated that the van, which was registered in the name of Quality Contractors and was located at 55 East Sherman Street, was an "Inoperable Motor Vehicle" and that he must remove it, dispose of it, or enclose it in a building within seven days.  The notice informed Redwood of his right to request a hearing and that if he did not request a hearing, dispose of the van, or enclose it within seven days, the van was "subject to being towed and impounded."  

Sometime between May 13 and May 19, 1997, one or both of the plaintiffs served a notarized affidavit upon the Village, requesting an extension of time for making repairs to the van.  On May 19, 1997, the village clerk responded with a letter, notifying plaintiffs that "[a] hearing has been scheduled for the three inoperable vehicles notices delivered to you by the deputy sheriff on May 13, 1997."  The record does not reference any other inoperable vehicles at 505 East Sherman Street besides the van.  The hearing was scheduled for May 27, 1997.

At the hearing, plaintiffs requested an extension of 30 days to finish repairing the van because they were waiting for the delivery of parts that had been ordered.  The board granted an extension of seven days, until June 4, 1997.  Plaintiffs completed the repairs on June 2, 1997, replaced the front wheels, and removed the van from the blocks.  On June 3 and 4, plaintiffs drove the van to work.  On June 5, the van was parked at a different spot on Jude Redwood’s private residential property at 505 East Sherman Street.  Erik Redwood had left his tools and toolbox­es inside the van.  On that date, Deputy Sheriff Vercler entered Jude Redwood’s land, without a warrant and without her consent, and towed the van away under color of the ordinance.  Vercler was acting on the advice or orders of Hackler, Lierman, and the Village, or on the advice or orders of some of them.  When plaintiffs retrieved the van from the towing company, after paying a $75 towing fee, the tools and toolbox­es were gone.  

In their amended complaint, which they filed on June 1, 2000, plaintiffs alleged that defendants violated the fourth and fourteenth amendments (U.S. Const., amends. IV, XIV)--and, therefore, section 1983--by entering private property and searching and seizing the van without a warrant and without first giving them notice and an opportunity for a hearing.  The complaint purports to sue Hackler and Vercler in their "official and individual capacities."  In counts I, II, III, and IV, plaintiffs sued Lierman, Hackler, Vercler, and the Village, respectively, for depriving them of property without the due process of law, in violation of the fourteenth amendment.  In counts V, VI, VII, and VIII, plaintiffs sued the same defendants for unreasonably searching and seizing the van, "without their consent and without a warrant," in violation of the fourth amendment.  Defendants filed motions to dismiss the amended complaint pursuant to sections 2-615 and 2-619, contending that plaintiffs had failed to plead a violation of either the fourth or fourteenth amendment and also contending that common-law immunities and a statute of limitation barred the claims.  In an "Opinion Memorandum and Order" filed on March 22, 2001, the trial court granted the motions, dismissing the amended complaint with prejudice.  

The trial court partly disagreed with defendants.  It rejected defendants’ contention that the two-year statute of limitation barred the claims.  See 
Wilson v. Garcia
, 471 U.S. 261, 280, 85 L. Ed. 2d 254, 269, 105 S. Ct. 1938, 1949 (1985); 735 ILCS 5/13-202 (West 2000).  The court found that the new claims, in the amended complaint, arose out of the facts that plaintiffs had pleaded in the original complaint.  See 735 ILCS 5/2-616(b) (West 2000).  The court also rejected defendants’ contention that the entry onto Jude Redwood’s land and the towing of the van were random, unauthorized acts that could not be attributed to the Village.  See 
Parratt v. Taylor
, 451 U.S. 527, 537-44, 68 L. Ed. 2d 420, 430-34, 101 S. Ct. 1908, 1914-17 (1981), 
overruled
 
on
 
other
 
grounds
 
by
 
Daniels v. Williams
, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986).  

The court agreed with defendants, however, as to plaintiffs’ failure to state a cause of action for violation of the fourteenth amendment.  The court cited a decision of the United States Court of Appeals for the Seventh Circuit, 
Sutton v. City of Milwaukee
, 672 F.2d 644, 648 (7th Cir. 1982), wherein the court held that governmental officials need not give owners notice and an opportunity to be heard prior to towing illegally parked cars.  By the trial court’s reasoning, if the due process clause did not require the City of Milwaukee to provide owners any notice or an opportunity for a hearing prior to towing illegally parked vehicles, the due process clause did not require the Village to provide those procedures to plaintiffs before entering Jude Redwood’s private residential property and towing away what it thought was an inoperable van.  Nevertheless, the court noted, plaintiffs received those procedural protection­s as the ordinance required.  By enforcing an ordinance that generously bestowed procedural protectio­ns over and above what the due process clause required, the court reasoned that Lierman, Hackler, and Vercler could not have violated the due process clause.

The trial court also agreed that it was unclear, from the case law, whether the fourth amendment forbade what defendants had done.  Consequently, the individual defendants had a qualified immunity, an "other affirmative matter" that defeated the claims against them.  See 735 ILCS 5/2-619(a)(9) (West 2000).  According to the court, because the law shields governmental officials from civil liability unless they violate clearly established constitutional rights and because the constitutional right in this case was not clearly established, the individual defendants were immune from liability under section 1983.  See 
Harlow v. Fitzgerald
, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410, 102 S. Ct. 2727, 2738 (1982); 
Rakovich v. Wade
, 850 F.2d 1180, 1210 (7th Cir. 1988) (where the Seventh Circuit outlines an approach based on 
Harlan
 concerning the alleged violation of constitutional standards).  Citing 
Bogan v. Scott-Harris
, 523 U.S. 44, 54, 140 L. Ed. 2d 79, 88, 118 S. Ct. 966, 972 (1998), the trial court further held that the Village itself had legislative immunity.

As for deputy sheriff Vercler, the trial court held that plaintiffs had "failed to plead any facts to establish that [he] acted pursuant to an official policy or custom promulgated by the Champaign County Sheriff’s office that could be deemed unconstitutional."  The trial court held that under 
South Dakota v. Opperman
, 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976), "the authority of the police to remove or seize vehicles for parking ordinance violations when those vehicle impede traffic or threaten public safety and convenience is 'beyond challenge.'"  Accordingly, the trial court dismissed the amended complaint with prejudice.

This appeal followed.

II. ANALYSIS

A. Fourth Amendment

The fourteenth amendment makes the fourth amendment applicable to the states.  
Soldal v. Cook County
, 506 U.S. 56, 61, 121 L. Ed. 2d 450, 458, 113 S. Ct. 538, 543 (1992).  The fourth amendment states in part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const., amend. IV.  The framers would have understood "effects" to mean personal property.  
Oliver v. United States
, 466 U.S. 170, 177 n.7, 80 L. Ed. 2d 214, 223 n.7, 104 S. Ct. 1735, 1740 n.7 (1984).  Governmental officials "seize" property when they interfere, in a meaningful way, with someone’s possessory interest in that property.  
Soldal
, 506 U.S. at 61, 121 L. Ed. 2d at 458, 113 S. Ct. at 543.  

"In the ordinary case, the [Supreme] Court has viewed a seizure of personal property as 
per
 
se
 unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized­."  
United States v. Place
, 462 U.S. 696, 701, 77 L. Ed. 2d 110, 116-17, 103 S. Ct. 2637, 2641 (1983); 
cf.
 
Camara v. Municipal Court
, 387 U.S. 523, 528-29, 18 L. Ed. 2d 930, 935, 87 S. Ct. 1727, 1730-31 (1967) ("except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant").  Even if a public official enters a private building with the intention of abating a nuisance, the official ordinarily must have a warrant.  
Michigan v. Tyler
, 436 U.S. 499, 504-05, 56 L. Ed. 2d 486, 495, 98 S. Ct. 1942, 1947 (1978).  

The fourth amendment’s protection against unreasonable searches and seizures fully "applies in the civil context."  
Soldal
, 506 U.S. at 67, 121 L. Ed. 2d at 462, 113 S. Ct. at 546.  For example, in 
Bezayiff v. City of St. Louis
, 963 S.W.2d 225, 228, 231-32 (Mo. App. 1997), an ordinance allowed the city to enter private property to remove disabled automobiles without first obtaining the consent of the landowner or obtaining a warrant.  The Court of Appeals of Missouri held that "[t]he ordinance is unconstitutional under the Fourth Amendment insofar as it purports to authorize removal of vehicles from private property without a warrant."  
Bezayiff
, 963 S.W.2d at 235.  We find 
Bezayiff
 to be persuasive.  

In the present case, plaintiffs allege that defendants seized the van while the van was parked on Jude Redwood’s private residential property.  One may reasonably infer that the van was sitting within the curtilage of her home.  Plaintiffs allege that defendants had no warrant to come onto the land and seize their "effects."  If the Supreme Court held, in 
Place
, that depriving someone of luggage for 90 minutes was a meaningful enough interference with a possessory interest to qualify as a "seizure," the towing away of the van, along with the tools and toolboxes, certainly qualifies.  
Place
, 462 U.S. at 709-10, 77 L. Ed. 2d at 122, 103 S. Ct. at 2645-46.  Although Quality Contractors, rather than plaintiffs, technically owned the van, plaintiffs had the right to possess and use the van, and a "possessory interest" is enough to confer standing under the fourth amendment.  See 
Soldal
, 506 U.S. at 62, 121 L. Ed. 2d at 459, 113 S. Ct. at 544 (where the Supreme Court held that the fourth amendment extends to property as well as privacy).  Of course, Erik Redwood owned the toolboxes and tools. 

         The trial court relied on 
Opperman
 for the proposition that police have authority to seize vehicles when those vehicles "threat­en public safety and conve­nience."  However, we find that decision to be factually distinguishable from the case 
sub
 
judice
.  In 
Opperman
, the police towed a car that was illegally parked in a restricted zone.  
Opperman
, 428 U.S. at 365-66, 49 L. Ed. 2d at 1003, 96 S. Ct. at 3095.  While inventorying the contents of the car in the impound lot, the police found a bag of marijuana.  
Opperman
, 428 U.S. at 366, 49 L. Ed. 2d at 1003, 96 S. Ct. at 3095.  They arrested the owner of the car on charges of possessing marijuana.  
Opperm­an
, 428 U.S. at 366, 49 L. Ed. 2d at 1003, 96 S. Ct. at 3095.  He moved to suppress the evidence on the ground that the police had obtained it in violation of the fourth amendment.  
Opperman
, 428 U.S. at 366-67, 49 L. Ed. 2d at 1003-04, 96 S. Ct. at 3095-96.  For two reasons, the Supreme Court held that the search and seizure were not unreasonable.  First, "the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible."  
Opperman
, 428 U.S. at 367, 49 L. Ed. 2d at 1004, 96 S. Ct. at 3096.  Second, "the expectation of privacy with respect to one’s automobile is significantly less than that relating to one’s home or office."  
Opperman
, 428 U.S. at 367, 49 L. Ed. 2d at 1004, 96 S. Ct. at 3096.

When the police seized the car in 
Opperman
, it was parked on the street or in some other public place to which the municipal parking ordinances applied.  In the present case, by contrast, when defendants seized the van, it was parked on Jude Redwood’s private residential property, allegedly within the curtilage of her home.  The distinction is crucial.  The curtilage, the land immediately surrounding and associated with the home, "warrants the Fourth Amendment protections that attach to the home."  
Oliver
, 466 U.S. at 180, 80 L. Ed. 2d at 225, 104 S. Ct. at 1742.  By parking a vehicle in the driveway or yard of one’s home, one brings the vehicle within the zone of privacy relating to one's home.  In short, one’s backyard is a vastly different place, for purposes of the fourth amendment, than a public street.  

     Defendants contend that because the Village gave plaintiffs notice and an opportunity to be heard prior to entering Jude Redwood's land and seizing the van, they did not violate the fourth amendment.  In their brief, defendants repeatedly confuse the fourth amendment with the fourteenth amendment.  For example, 
they cite 
Parratt
 in support of their argument that the fourth amendment "does not *** protect again­st all deprivations of property by the State, but only those deprivations without due process of law."  
Parratt
, however, is distinguishable in that the respondent in that case alleged a violation of the fourteenth amendment and not the fourth amendment.  
Parratt
, 451 U.S. at 536, 68 L. Ed. 2d at 429, 101 S. Ct. at 1913.  Further, the Village is the one providing the process, not a neutral and detached judicial officer.  The Supreme Court "long has insisted that inferences of probable cause [for the purpose of issuing a warrant] be drawn by 'a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'"  
Shadwick v. City of Tampa
, 407 U.S. 345, 350, 32 L. Ed. 2d 783, 788, 92 S. Ct. 2119, 2123 (1972), quoting 
Johnson v. United States
, 333 U.S. 10, 14, 92 L. Ed. 436, 440, 68 S. Ct. 367, 369 (1948).

     In 
Conner v. City of Santa Ana
, 897 F.2d 1487, 1489, 1492 (9th Cir. 1990), the court held that the city had violated the fourth amendment by entering the plaintiffs' fenced yard and seizing some old and apparently inoperable automobiles.  The district court had concluded that the warrantless seizures of the automobiles did not violate the fourth amendment, because, as defendants argue in this case, the seizure was preceded by numerous administrative hearings and appeals.  
Conner
, 897 F.2d at 1490.  The court of appeals rejected that reasoning and held that there was no "process exception" to the requirement of a warrant.  
Conner
, 897 F.2d at 1491.

     Except for a "few specifically established and well-delineated exceptions," "searches conducted outside the judicial process, without prior approval by judge or magistrate, are 
per
 
se
 unreasonable under the Fourth Amendment."  
Katz v. United States
, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967).  Obviously the same rule applies to seizures.  
Place
, 462 U.S. at 701, 77 L. Ed. 2d at 116-17, 103 S. Ct. at 2641.  Defendants have not explained how this case fits into any of the carefully drawn exceptions.  Therefore, we hold that plaintiffs have sufficiently pleaded a violation of the fourth amendment.  

B. Fourteenth Amendment

1. 
Prior
 
to
 
the
 
Towing
, 
What
 
Process
 
Was
 
Due
?

     A municipality may tow a car illegally parked on public streets without first giving the owner of the car notice and an opportunity for a hearing.  
Sutton
, 672 F.2d at 648.  It does not follow that a municipality can tow a car parked on the owner's private property without first affording those procedural safeguards.

To arrive at its conclusion 
that the due process clause required no notice or opportunity for a hearing, the Seventh Circuit in 
Sutton
 applied the cost-benefit analysis that the Supreme Court set forth in 
Mathews v. Eldridge
, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976).  The court compared "the benefit of the procedural safeguard sought, which is a function of the value of the property interest at stake and the probability of erroneous deprivations if the safeguard is not provided, with the cost of the safeguard."  
Sutton
, 672 F.2d at 645.

     The court deemed the value of the property interest to be slight.  The owner would lose merely the use of the car for a few hours.  
Sutton
, 672 F.2d at 646.  By not giving notice and an opportunity for a hearing prior to towing the illegally parked vehicle, the city ran no great risk of inflicting an erroneous deprivation.  
Sutton
, 672 F.2d at 646.  Typically, it was quite clear whether a car was parked illegally or not, and there seemed little chance of convincing a trier of fact that the car had been parked legally.  
Sutton
, 672 F.2d at 646.  Finally, the cost of providing the pretowing safeguards would have been great.  If the city had to provide a notice and an opportunity for a hearing prior to towing illegally parked cars, the city effectively would have to stop towing illegally parked cars, even though such cars blocked traffic and caused emergencies.  
Sutton
, 672 F.2d at 646.  After weighing those factors against one another, the Seventh Circuit held that the due process clause did not require the city to provide notice and an opportunity for a hearing before towing cars illegally parked on public streets.  
Sutton
, 672 F.2d at 646.     

     In the present case, the trial court applied 
Sutton
 without appreciating the difference in facts and without actually comparing the three factors as the court did in 
Sutton
.  
First, the value of the property interest at stake in the present case would be somewhat greater than that in 
Sutton
.  By towing away an inoperable motor vehicle, the Village is announcing its determination that the vehicle is not welcome in the Village unless it is enclosed in a building.  Not only will the owner incur the cost of retrieving the vehicle from the towing company, but, unless the owner has a building that can accommodate the vehicle, he or she will incur the additional cost of parking the vehicle elsewhere, outside Village limits.  
Second, the Village is likely to make mistakes if it offers no hearing at all.  One often cannot tell whether a vehicle is operable simply by looking at its exterior.  Third, the cost of providing the pretowing procedures is slight.  If, to qualify as an "Inoperable Motor Vehicle," the vehicle sat immobile for 14 days, the additional time needed to provide the requisite hearing would not make an appreciable difference in the quality of life in the Village.

     We hold that prior to towing away an "Inoperable Motor Vehicle" from private residential property, the Village must provide reasonable notice to interested persons and an opportunity for a hearing.  See 
Mullane v. Central Hanover Bank & Trust Co.
, 339 U.S. 306, 313-14, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657 (1950).  We do not agree with the trial court that those predeprivation procedures were optional.  As one federal district court has said:

"In light of *** the position of motor vehicles as virtual 'necessaries for ordinary, day-to-day living' in American society [citation], it cannot reasonably be disputed that the impoundment of one's automobile may constitute or eventuate a 'grievous loss'. [Citation.] Thus, before a state or local government may so interrupt its use, the owner is entitled to due process."  
Graff v. Nicholl
, 370 F. Supp. 974, 981 (N.D. Ill. 1974).  

2. 
Did
 
the
 
Village
 
Provide
 
Adequate
 
Pretowing
 
Procedures
?

     Defendants argue that plaintiffs received an adequate notice and hearing.  The Village served a notice upon Jude Redwood while the van was sitting on blocks in her driveway with the wheels off.  Plaintiffs had a hearing, in which the board ordered them to restore the van to working order within seven days.  Within the seven-day period, plaintiffs completed repairs to the van and thereby complied with the Village's order.  When Mayor Hackler ordered deputy sheriff Vercler to tow the van, not only did the van have the wheels on, but it was off the blocks and parked in a different location on Jude Redwood's property.  The appearance and location of the van had changed.  The question is, should the Village have given plaintiffs a new notice and a new opportunity for a hearing prior to towing the van?  We hold they should have.

     "'[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place[,] and circumstances.'"  
Graff
, 370 F. Supp. at 980, quoting 
Cafeteria & Restaurant Workers Union, Local 473 v. McElroy
, 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 1236, 81 S. Ct. 1743, 1748 (1961).  "The notice and opportunity to be heard must be granted at a meaningful time and in a meaningful manner."  
Graff
, 370 F. Supp. at 981.  

If, at the end of the seven days, the van was still up on blocks and the wheels were still off, plaintiffs would have had no right to a new notice and another hearing.  Those are not the facts that plaintiffs have pleaded in their amended complaint.  One might have realized, or at least strongly suspected, that the van had been repaired, because the wheels were on it and it had moved to a different spot.  Plaintiffs had informed the Village that only the brakes needed to be repaired and that once the brakes were repaired, the van would be operable.  The wheels were off so that plaintiffs could work on the brakes.  That the wheels now were back on was a strong indication that plaintiffs had repaired the brakes.  To tow the van, in these circumstances, without first hearing from plaintiffs was to run a high risk of inflicting an erroneous deprivation.  Plaintiffs had a hearing but not at a "meaningful time."  Once plaintiffs made the timely repairs in obedience to the board's order, the matter that had occasioned the original notice and hearing was resolved.  The towing presented a new matter, requiring a new notice and a new opportunity for a hearing.  

       C. Section 1983

     Section 1983 states, in part:

     "Every person who, under color of any *** ordinance, *** subjects, or causes to be subjected, any citizen of the United States *** to the deprivation of any rights, privileges, or immunities secured by the Constitution ***, shall be liable to the party injured ***."  42 U.S.C. §1983 (1994).

     Municipalities and other local governmental units are "persons" within the meaning of section 1983.  
Monell v. Department of Social Services
, 436 U.S. 658, 690, 56 L. Ed. 2d 611, 635, 98 S. Ct. 2018, 2035 (1978). 

     In the following passage, the Supreme Court held that there can be no 
respondeat
 
superior
 liability under section 1983:

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy ***, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  
Monell
, 436 U.S. at 694, 56 L. Ed. 2d at 638, 98 S. Ct. at 2037-38.

The purpose of requiring an "official policy" is to distinguish between the act of a municipality and the act of its employees.  
Ross v. United States
, 910 F.2d 1422, 1430 (7th
 Cir. 1990).  Multiple applications of the policy tend to confirm the policy's existence, but there can be a policy even though it has been implemented only one time.  
Ross
, 910 F.2d at 1430.  The Seventh Circuit said:

"Where a particular course of action is authorized by a municipality's authorized decisionmakers, it represents a policy rightly attributed to the governmental entity, and in such a case, there is no need to resort to proof of the policy's multiple applications to attribute its existence to the municipality."  
Ross
, 910 F.2d at 1430.

     When Lierman and Hackler ordered or advised Vercler to tow away the repaired van without notice and an opportunity for a hearing, they were not implementing a policy of the Village.  Clearly, the Village's ordinance required notice and an opportunity for a hearing.  Therefore Lierman's and Hackler's alleged violation of plaintiffs' due process rights under the fourteenth amendment cannot be attributed to the Village.  Plaintiffs argue that because the ordinance did not expressly require someone to ask them whether they had made the repairs as the board had ordered them to do, the ordinance permitted a misunderstanding to occur.  It does not follow that the Village actually condoned towing vehicles without first hearing what the owners had to say.  Nor does it appear, from the amended complaint, that any similar misunderstandings ever had occurred in the past.

     Although the ordinance required a notice and an opportunity for a hearing, it did not require a warrant.  One could reasonably infer that when Lierman and Hackler told deputy sheriff Vercler to have the van towed away from Jude Redwood's private residential property without first obtaining a warrant, they were implementing the Village's policy in that respect.  After all, section 6-5-6(B) of the ordinance does state the following:  "In the event said vehicle is not disposed of or enclosed within a building by the said date set by the Board of Trustees, then the Champaign County Sheriff or a deputy sheriff shall cause the towing or removal of the Inoperable Motor Vehicle without further, prior notice thereof."  Village of St. Joseph Amended Ordinance, Title 6, Chapter 5, Inoperable Motor Vehicles, §6-5-6(B) (eff. October 9, 1990).  The ordinance purports to describe, in some detail, the procedures leading up to the towing, and it specifies when the enforcement of the ordinance should be stayed.  Obtaining a warrant is not among the procedures, and the only circumstance in which enforcement is stayed is when a hearing and decision by the board are pending.

     With respect to the violation of the fourth amendment, plaintiffs have pleaded a policy attributable to the Village, but they have not pleaded a policy attributable to the sheriff of Champaign County.  By suing deputy sheriff Vercler in his official capacity, plaintiffs in effect sued the governmental entity of which he was a part, 
the sheriff's office.  See 
Sanville v. McCaughtry
, 266 F.3d 724, 732-33 (7th Cir. 2001).  The trial court was correct in dismissing the "official capacity" actions against Vercler.  

     Insofar as plaintiffs sued Mayor Hackler in his official capacity, they merely restated their cause of action against the Village, and for that reason the trial court's dismissal of the redundant "official capacity" actions against him was proper.  Further, as we have held, Mayor Hackler's alleged fourteenth amendment violation is not attributable to the Village, and the Village cannot incur liability for it via an "official capacity" action against him.  The Village may be liable under the fourth amendment, but because plaintiffs already pleaded that theory in count VIII, there was no need to plead it again in the guise of an "official capacity" action against Mayor Hackler.

D. Common-Law Immunities

1. 
Legislative Immunity

     In 
Bogan
, the Supreme Court held that "[l]ocal legislators are entitled to absolute immunity from § 1983 liability for their legislative activities."  
Bogan
, 523 U.S. at 54, 140 L. Ed. 2d at 88, 118 S. Ct. at 972.  The Village is not a legislator; it is a governmental entity.  Therefore the trial court erred in holding that the Village had legislative immunity.

     Plaintiffs alleged that Lierman, as the Village attorney, drafted the ordinance.  Lierman is correct that he has legislative immunity for his assistance in drafting the ordinance.  See 
Aitchison v. Raffiani
, 708 F.2d 96, 99-100 (3d Cir. 1983) (borough attorney who assisted in drafting legislation was entitled to legislative immunity).  Plaintiffs also alleged that Lierman "authorized or ordered" deputy sheriff Vercler to seize the van.  Because that act was not legislative in nature, legislative immunity does not extend to it.  See 
Heiar v. Crawford County
, 558 F. Supp. 1175, 1181 (W.D. Wis. 1983) ("legislative acts," for purposes of immunity, include "the introduction of, debate about, and voting on local legislation").

2. 
Qualified
 
Immunity

     Defendants argue that under the facts in the amended complaint, they are entitled to a qualified immunity from liability because the applicable legal standards were not clearly established at the time they acted.  When deciding whether a governmental official has qualified immunity, the court first will decide whether the official violated the plaintiff's constitutional rights, and then the court will decide whether those rights were clearly established at the time the official acted.  
Montville v. Lewis
, 87 F.3d 900, 902 (7th Cir. 1996).  

     Of course, the right to be free from unreasonable searches and seizures and the right to due process before the taking of property are clearly established, but those truisms are too general for purposes of this analysis.  In discussing a governmental official's qualified immunity, the Supreme Court has said:

"[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be suffi- ciently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful [cita­tion]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. [Citations.]"  
Anderson v. Creighton
, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 531, 107 S. Ct. 3034, 3039 (1987). 

In other words, while cases with the identical set of facts are unnecessary, there must be cases that are sufficiently analogous that "reasonably diligent governmental officials would have known of the case law, related it to the situation at hand, and molded their conduct accordingly."  
Lojuk v. Johnson
, 770 F.2d 619, 628 (7th Cir. 1985).

     The cases need not be binding precedent.  
Rakovich 
850 F.2d at 1209.  Absent binding precedent, "'"a court should look to whatever decisional law is available to ascertain whether the law is clearly established."'"  
Rakovich
, 850 F.2d at 1209, quoting 
Powers v. Lightner
, 820 F.2d 818, 821 (7th Cir. 1987), quoting 
Capoeman v. Reed
, 754 F.2d 1512, 1514 (9th Cir. 1985).

     We already have cited and discussed 
Bezayiff
 and 
Conner
.  The fourth amendment violations in those cases are factually similar to the alleged violation in this case.  Other cases are likewise persuasive even though the cases did not involve the towing of cars.  In 
Camara
, 387 U.S. at 534, 18 L. Ed. 2d at 938, 87 S. Ct. at 1733, the fourth amendment forbade a municipal health inspector from entering and inspecting someone's apartment without a warrant.  In 
Oliver
, 466 U.S. at 180, 80 L. Ed. 2d at 225, 104 S. Ct. at 1742, the Supreme Court held that the curtilage is considered part of the home itself for purposes of the fourth amendment.  From those holdings, it should have been apparent that the warrantless seizure of a chattel lying with the curtilage of a home ordinarily is unconstitutional.  Compare 
Conner
, 897 F.2d at 1492 (in which the court said (responding to a claim of qualified immunity):  "[I]n light of 
Tyler
 it is difficult to understand how the law requiring a warrant was anything less than clear").  Considering the well-pleaded facts of the amended complaint in a light most favorable to plaintiffs (see 
Dial Corp. v. Marine Office of America
, 318 Ill. App. 3d 1056, 1060, 743 N.E.2d 621, 624 (2001)), we do not agree that the individual defendants have qualified immunity for their violation of the fourth amendment. 

     We hold, however, that the individual defendants have qualified immunity for their violation of the fourteenth amendment.  To understand the necessity for another hearing, the governmental official would have had to perform a factual analysis and to apply his judgment or discretion to those facts.  The due process violation would not necessarily have been clear to a reasonably diligent official.  Defendants could reasonably have believed that because plaintiffs had a hearing a little more than a week prior to the towing, another hearing was not required.  

     For the reasons stated, the trial court was correct in dismissing the "official capacity" actions against Vercler and Hackler.  The trial court was correct in dismissing counts I, II, and III of the amended complaint, the counts against Lierman, Hackler, and Vercler for a violation of the fourteenth amendment.  T­he trial court also was correct in dismissing count IV of the amended complaint, 
the count against the Village for a violation of the fourteenth amendment.  The trial court erred, however, in dismissing counts V, VI, VII, and VIII of the amended complaint, and we reverse the dismissal of those counts. 

III. CONCLUSION

     We affirm in part and reverse in part the trial court's judgment and remand for further proceedings not inconsistent with this order.

     Affirmed in part and reversed in part; cause remanded.

McCULLOUGH, P.J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent and would affirm the decision of the trial court.  Plaintiffs were not denied due process under the fourteenth amendment:  they were given notice and a hearing before their business van was declared "inoperable."  Nor were plaintiffs denied any rights under the fourth amendment.  The majority ignores the cases holding that a warrant is unnecessary when a municipality seizes property that has been declared to be a nuisance, relying instead on the much-criticized 
Conner
 case.  Finally, "qualified immunity" protects government officials where plaintiffs are not able to show the violation of a "clearly established" right, and plaintiffs have not shown any such violation here.   

It is important that meritless section 1983 actions be terminated quickly.  It is unfortunate that plaintiffs, both of whom are lawyers, have been able to tie up the Village for so long, over this May 1997 incident. Our normal reluctance to decide cases on the pleadings does not apply here.  Most federal circuits apply strict pleading requirements to section 1983 complaints implicating qualified-immunity issues.  See, 
e.g.
, 
Eddington v. Missouri Department of Corrections
, 52 F.3d 777, 779 n.3 (8th Cir. 1995).              

A section 2-619 motion is similar to a motion for summary judgment, one difference being that it comes early in the case, before there is an opportunity for discovery.  
Leow v. A&B Freight Line, Inc.
, 175 Ill. 2d 176, 187-88, 676 N.E.2d 1284, 1289 (1997).  It is appropriate to decide the issues raised here on a section 2-619 motion.  "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.  ***  Until this threshold immunity question is resolved, discovery should not be allowed."  
Harlow
, 457 U.S. at 818, 73 L. Ed. 2d at 410-11, 102 S. Ct. at 2738. 

Despite the concerns of the majority, there is no doubt that the junk vehicle ordinance here is valid.  "General welfare accommodates the concept that an environment free from unsightliness and other visual intrusion enhances life and is a value that the police power will protect."  
Bezayiff
, 963 S.W.2d at 229.  "The ordinance before us was unquestionably enacted for the purpose of promoting the health and protecting the safety of the members of the community."  
Radcliff v. City of Berwyn
, 129 Ill. App. 3d 70, 72, 472 N.E.2d 98, 100 (1984) ("the attractiveness of such unkempt areas to rats and vermin are well known"). 

Counts I, II, III, and IV, based on the plaintiffs' argument that they were denied due process in violation of the fourteenth amendment, must be dismissed.  The argument that plaintiffs were not given due process is rejected by the very cases on which the majority relies.  The fundamental requirements of procedural due process are notice and an opportunity to be heard.  "There is no requirement, however, that a court must be involved in the process in order to comply with the constitution."  
Conner
, 897 F.2d at 1492-93.  "A warrant is unnecessary when a municipality seizes property that has been declared a nuisance by means of established police power procedures."  
Freeman v. City of Dallas
, 242 F.3d 642, 644-45 (5
th Cir. 2001) (
en
 
banc
), 
cert
. 
denied
, ___ U.S. ___, 151 L. Ed. 2d 18, 122 S. Ct. 47 (2001).  Plaintiffs here were afforded written notice, a hearing, and they could have sought administrative review or to enjoin the Village's action in the circuit court.  See 
Conner
, 897 F.2d at 1493; see 65 ILCS 5/1-2.1-7 (West 2000).  The determination that this was an inoperable vehicle was not an arbitrary determination.  

Plaintiffs were present at a hearing at which the vehicle was found to be inoperable.  Under the ordinance, the vehicle was then to be "disposed of or enclosed within a building by the said date set by the Board of Trustees" (Village of St. Joseph Amended Ordinance, Title 6, Chapter 5, Inoperable Motor Vehicles, §6-5-6(B) (eff. October 9, 1990)) or it would be towed by the sheriff without further notice.  Plaintiffs requested an additional alternative, that they be allowed to repair the vehicle before the date set, and the board granted that request.  The ordinance wisely did not include repair as an alternative.  It is possible for the sheriff to determine whether a vehicle has been disposed of or enclosed, but how does he determine whether it has been repaired?  In the present case, how would the sheriff know that the vehicle had spent time in a repair shop or that the plaintiffs had taken it to work several times?  Putting wheels on an inoperable vehicle and moving it may be nothing more than a ruse.  The ordinance assigned the duty of determining whether the vehicle was operable to the board, not to the sheriff, and if plaintiffs had evidence indicating that the board should reconsider its finding of inoperability, plaintiffs should have made that information known to the board.  

There is no suggestion here that the Board hearing was somehow continued or incomplete.  The majority recognizes that the Board had found the vehicle to be inoperable, and the vehicle could have been towed "[i]f, at the end of the seven days, the van was still up on blocks and the wheels were still off."  Slip op. at 19.  The majority holds, however, that there should have been a second hearing, a hearing "at a 'meaningful time.'"  Slip op. at 19, quoting 
Graff
, 370 F. Supp. At 981
.  Under the majority's analysis there would be a never-ending series of hearings to make sure the vehicle had not been repaired since the last hearing.  Once the determination had been made that the vehicle was inoperable, plaintiffs had the burden to bring new facts warranting reconsideration to the attention of the board.      Counts V, VI, VII and VIII, complaining that defendants' failure to obtain a warrant violated the fourth amendment, must also be dismissed.  The majority quotes 
Bezayiff
 and 
Conner
 for the proposition that an "'ordinance is unconstitutional under the [f]ourth [a]mendment insofar as it purports to authorize removal of vehicles from private property without a warrant.'"   Slip op. at 11, quoting 
Bezayiff
, 963 S.W.2d at 235; 
Conner
, 897 F.2d at 1490.  More recent and better-reasoned cases have held to the contrary.  "The Eighth and Sixth Circuits have found no [f]ourth [a]mendment bar to warrantless condemnation and eviction proceedings, where satisfactory administrative procedures preceded them."  
Freeman
, 242 F.3d at 652; 
Samuels v. Meriwether
, 94 F.3d 1163, 1168 (8
th Cir. 1996); 
Hroch v. City of Omaha
, 4 F.3d 693, 697 (8
th Cir. 1993); 
Flatford v. City of Monroe
, 17 F.3d 162, 170 (6
th Cir. 1994).  "We disagree with 
Conner
 for reasons stated in Judge Trott's dissent, 897 F.2d at 1494-98, and based on our evaluation of [f]ourth [a]mendment reasonableness."  
Freeman
, 242 F.3d at 652.  

The Supreme Court "did extend a warrant requirement of a sort to administrative inspections" in 
Camara
.  
Freeman
, 242 F.2d at 650.  
Camara
, however, did not hold that the fourth amendment applied to administrative searches to the same extent it applied to criminal searches.  The present case is further distinguishable from 
Camara
, which involved a 
search
 to gather evidence of noncompliance.  Here, the evidence of municipal code violations had already been obtained when the sheriff entered the property and the administrative adjudication of noncompliance had occurred.  See 
Freeman
, 242 F.3d at 650-51.  In 
Camara
,
 the inspectors had unbridled discretion; in the present case, the municipal code specified grounds on which a vehicle may be determined to be inoperable.  The vehicle owners' right to defend the case against their vehicle was procedurally secure.  See 
Freeman
, 242 F.3d at 651. 

Permitting damages suits against governmental officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.  
Harlow
, 457 U.S. at 814, 73 L. Ed. 2d at 408, 102 S. Ct. at 2736.  The Supreme Court has accordingly adopted a doctrine of qualified immunity, that "government officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  
Harlow
, 457 U.S. at 818, 73 L. Ed. 2d at 410, 102 S. Ct. at 2738; 
Davis v. Scherer
, 468 U.S. 183, 197, 82 L. Ed. 2d 139, 151, 104 S. Ct. 3012, 3020-21 (1984).  The unlawfulness must be apparent in the light of preexisting law.  
Anderson
, 483 U.S. at 640, 97 L. Ed. 2d at 531, 107 S. Ct. at 3039.  On summary judgment, the judge may appropriately determine, not only the currently applicable law, but whether "that law was clearly established at the time an action occurred."  
Harlow
, 457 U.S. at 818, 73 L. Ed. 2d at 410, 102 S. Ct. at 2738.  The majority's rule requiring a warrant is not only not clearly established, it is not the law.  Qualified immunity applies. 

Plaintiffs essentially argue, not that they were denied a hearing, but that a mistake was made after the hearing, resulting in their paying a $75 towing fee and the loss of their tools.  Even assuming defendants made a mistake, a negligent deprivation of property, resulting from random and unauthorized conduct of a state actor, does not give rise to a procedural due process claim under the fourteenth amendment so long as the state provides an adequate postdeprivation remedy.  
Parratt
, 451 U.S. at 543, 68 L. Ed. 2d at 433-34, 101 S. Ct. at 1917.