**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK OLIVERO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RANDALL CAPATINA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  02A03-1304-CR-131 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Judge
Cause No. 02D06-1208-FC-278

**January 24, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Randall Capatina ("Capatina") appeals his sentence following his guilty plea to Class C felony disarming a law enforcement officer.[1]

We affirm.

ISSUE

Whether the trial court erred in sentencing Capatina.

FACTS

On August 26, 2012, Officer Matthew Foote ("Officer Foote"), a police officer with the City of Fort Wayne, arrested Capatina for invasion of privacy. Officer Foote transported Capatina to the Allen County Jail, and along the way Capatina made several threatening statements, such as "I will fuck you up"; "as soon as I'm out of these cuffs, I'm going to hurt who ever [sic] is around me and myself"; "if we were at Walmart or McDonald's and you didn't have on that badge, I would fuck you up"; and "you let me out of these handcuffs and it will be the last decision you make[.] I've shot someone before[,] and I beat it, just like I'll beat this." (Sentencing Tr.1 25).[2] Capatina also asked for Officer Foote's address, last name, and wife's name, and told Officer Foote that he would "find out who [his] wife is" and "see [him] later." (Sentencing Tr.1 25). Finally, Capatina told Officer Foote that he would get an officer's gun at the jail. Officer Foote informed Capatina that there were not any guns, and Capatina responded that he would

---

[1] Ind. Code § 35-44.1-3-2.

[2] Because Capatina's sentencing hearing was continued, there are two sentencing transcripts. For purposes of this opinion, "Sentencing Tr.1" will refer to the transcript from the portion of Capatina's sentencing hearing held on February 1, 2013, and "Sentencing Tr.2" will refer to the portion of Capatina's sentencing hearing held on April 8, 2013.

2

instead get a pen and stab himself in the eye. Officer Foote later testified that he "got the sense that [Capatina was] very capable of doing ill will." (Sentencing Tr.1 26).

After reaching the jail, Capatina was transported to a hospital to receive medication. At the hospital, Allen County Police Officer Brandon Garrison ("Officer Garrison") relieved the officers watching Capatina. He heard Capatina continue to make statements threatening to harm himself and believed Capatina to be suicidal. When a nurse came into Capatina's room to administer the medication, Officer Garrison removed Capatina's arm restraints. Capatina successfully took the medication, but then said "I'm going to get your gun and shoot myself" and attempted to take Officer Garrison's firearm. (Sentencing Tr.1 30). A struggle ensued, and additional officers and nurses assisted in subduing Capatina before he could reach the firearm.

On August 30, 2012, the State charged Capatina with Class C felony disarming a law enforcement officer. Subsequently, on January 7, 2013, Capatina pled guilty to the charge without the benefit of a plea agreement. The trial court held a sentencing hearing on February 1, 2013, at which Capatina argued that his minimal criminal history and history of mental illness were mitigating factors. Capatina's counsel testified that Capatina had undergone a psychiatric evaluation in 2003 after multiple attempted suicides and has been diagnosed with depression and post-control disorder, as well as a potential but unconfirmed personality disorder. Capatina's counsel also argued to the trial court that depression was an ongoing concern because Capatina had been on suicide watch for a period of time while incarcerated. At the conclusion of the testimony, the

3

trial court continued the hearing in order to obtain a forensic mental health evaluation from Community Corrections.

On April 8, 2013, the trial court resumed the sentencing hearing. At the hearing, Capatina argued that his guilty plea and the fact that he took responsibility for his actions were additional mitigating factors. The trial court sentenced Capatina to six (6) years in the Department of Correction, with four (4) years executed and two (2) years suspended to probation. Capatina now appeals.

DECISION

On appeal, Capatina claims that the trial court erred in two respects. First, he argues that the trial court abused its discretion in imposing a sentence in excess of the advisory sentence for a Class C felony because the court did not identify any aggravating factors and overlooked mitigating factors. Second, he argues that his sentence is inappropriate in light of the nature of his offense and his character.

A. Aggravating and Mitigating Factors

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 493 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Under Indiana's advisory sentencing scheme, "once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then 'impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana.'" *Id.* at 491 (quoting I.C. § 35-38-1-7.1(d) (stating that a court may impose any sentence authorized by statute "regardless of the presence or absence of aggravating or mitigating circumstances.")). As

4

long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* at 490. We will find an abuse of discretion where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in a variety of ways, including: (1) failure to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91.

### 1. *Aggravating Factors*

With respect to aggravating factors, Capatina specifically argues that the trial court abused its discretion because it did not specify its reasons for sentencing him in excess of the advisory sentence for a Class C felony in its sentencing statement.[3] Trial courts are required to enter a sentencing statement whenever imposing a sentence for a felony offense. *Id.* at 490. This statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. *Id.* However, when reviewing the sufficiency of a sentencing statement, this Court may also examine the trial court's oral statements in the transcript of the sentencing proceedings in order to determine the trial court's findings. *See McElroy v. State,* 865 N.E.2d 584, 589 (Ind. 2007). In non-

---

[3] Pursuant to Indiana Code § 35-50-2-6, the minimum sentence for a Class C felony is two years, the maximum is eight years, and the advisory sentence is four years. Accordingly, Capatina's six year sentence is two years more than the advisory sentence of four years, although Capatina's executed sentence is equal to the advisory sentence.

5

death penalty cases, it is sufficient if the trial court's reasons for enhancing a sentence are clear from a review of the sentencing transcript. *Mundt v. State*, 612 N.E.2d 566, 568 (Ind. Ct. App. 1993), *trans. denied*.

Although the trial court here did not clarify its findings regarding aggravating factors in its judgment of conviction, its oral comments during the sentencing hearing adequately explain its reasons for imposing a six-year sentence. The State argued that the maximum sentence possible was necessary to protect the community because Capatina "is self-destructive and [] doesn't care who he hurts along the way." (Sentencing Tr.2 9). In response, the trial court stated "I cannot disagree with anything that has been said by either counsel." (Sentencing Tr.2 10). Also, the trial court made it clear to Capatina that his placement in the Department of Correction was "for security" because Capatina was not cooperating with his treatment and had quit taking his medication. (Sentencing Tr.2 11). The court also stated, "I understand that what's going on with you is not right, and you're not right, but I don't know how to fix that without your cooperation[,] and at this point it does not appear that you're cooperating, and that's why I impose the sentence that I do." (Sentencing Tr.2 12). Based on these comments during the sentencing hearing, we conclude that the trial court did elaborate its reasons for imposing a six-year sentence and accordingly did not abuse its discretion.

2. *Mitigating Factors*

Next, Capatina argues that the trial court improperly overlooked multiple mitigating factors that he advanced at trial, including that he (1) pled guilty without the benefit of a plea agreement; (2) accepted responsibility for his actions, as illustrated by

6

his apologies to Officer Garrison and hospital staff; (3) suffered from mental health issues and was suicidal at the time of the event; and (4) had a relatively minor adult criminal history.

In order to show that a trial court failed to identify or find a mitigating factor, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. While a failure to find mitigating circumstances clearly supported by the record may imply that the sentencing court improperly overlooked them, the court is obligated neither to credit mitigating circumstances in the same manner as would the defendant, nor to explain why it has chosen not to find mitigating circumstances. *Roush v. State*, 875 N.E.2d 801, 811 (Ind. Ct. App. 2007). Our Supreme Court has noted that "[i]f the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." *Smith v. State*, 770 N.E.2d 818, 822-23 (Ind. 2002). Notably, because Capatina argued for all of these mitigating factors at trial, it is clear that the trial court had the opportunity to consider each factor and was not obligated to explain why it chose not to find that the factors existed. *See id.* Nevertheless, we will address each factor in turn.

Although a guilty plea may be a mitigating circumstance, it "does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against him is such that the decision to plead guilty is merely a pragmatic one." *Barker v. State*, 994 N.E.2d 306, 312 (Ind. Ct. App. 2013) (quoting *Amalfitano v. State,* 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied*),

7

*reh'g denied.* Here, there was overwhelming evidence of Capatina's guilt such that the decision to plead guilty was merely pragmatic. In addition to Officer Garrison's testimony that Capatina attempted to reach his firearm, there is a video of the incident, and five to six people had to assist Officer Garrison in subduing Capatina. Accordingly, the trial court did not abuse its discretion when it did not find that Capatina's guilty plea was a mitigating factor.

With respect to Capatina's claim regarding his remorse, our Supreme Court has held that a trial court's determination of a defendant's remorse is similar to a determination of credibility. *Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002). Without evidence of impermissible consideration by the trial court, a reviewing court will accept its determination as to remorse. *Id.* In the instant case, we cannot find any evidence of an impermissible consideration. Officer Garrison testified that Capatina had apologized to him and the staff at the hospital, and then Capatina's counsel reiterated this point in closing. The trial court never responded to that argument in any manner that could imply that his consideration was impermissible. Accordingly, we conclude that the trial court did not abuse its discretion.

Capatina next challenges the trial court's implicit denial that his mental illness was a mitigating circumstance. A guilty but mentally ill defendant "is not automatically entitled to any particular credit or deduction from his otherwise aggravated sentence[.]" *Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002) (quoting *Archer v. State*, 689 N.E.2d 678, 684 (Ind. 1997)). Nonetheless, we have held that in sentencing a guilty but mentally ill defendant, trial courts "'should at a minimum carefully consider on the record what

8

mitigating weight, if any, to accord to any evidence of mental illness, even though there is no obligation to give the evidence the same weight the defendant does.'" *Id.* (quoting *Weeks v. State,* 697 N.E.2d 28, 30 (Ind. 1998)). There are several factors that bear on this determination, including: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Id.* (citing *Archer*, 689 N.E.2d at 685).

There is concededly a nexus between Capatina's depression and the commission of the crime. As Officer Garrison testified, he heard Capatina state multiple times that he wanted to hurt himself, to the extent that he believed Capatina was suicidal. Then, shortly before Capatina reached for Officer Garrison's firearm, Officer Garrison heard him say "I'm going to get your gun and shoot myself." (Sentencing Tr.1 30). Capatina also presented evidence that his mental illness was longstanding and that he had been diagnosed with depression in 2003. However, with respect to the other two *Archer* factors, there is no evidence in the record that Capatina was unable to control his behavior or had any limitations on his functioning.

To the contrary, the trial court implied that Capatina might have overstated his mental illness and, therefore, his lack of control over his actions. When discussing the results of the forensic evaluation, the trial court stated that "what turn[ed] up in the forensic" was that Capatina had "overstated [his] condition." (Sentencing Tr.2 12). While the results of the evaluation are not a part of the record on appeal, it is apparent

9

that they played a role in the trial court's decision.[4]  During its sentencing statement, the

trial court also stated:

> See, that's part of the problem here[,] Mr. Capatina, and the other problem
> in the evaluation is that it became clear that at least some of your problems,
> I'm not suggesting that you don't have a problem, but some of your
> problem is that you tend to overstate your problem as opposed to working
> with it . . . .

(Sentencing Tr.2 11).

Even absent the results of the forensic evaluation, however, it is clear that the trial

court carefully considered the issue of Capatina's mental illness, especially in terms of

Capatina's culpability for his actions.  First, the trial court continued the sentencing

hearing after hearing testimony about Capatina's illnesses in order to obtain a forensic

mental health evaluation from Community Corrections.  Then, during its sentencing

statement, the trial court acknowledged:

> I understand all the concerns about ability to control one[']s actions and
> whether or not we're guilty but mentally ill or not competent or all of those
> things that don't comply with . . . the letter of the rules of criminal law that
> require criminal intent together with an act, and all those have gotten real
> gray and real blurred in this case . . . .

(Sentencing Tr.2 12).  In light of this careful consideration and the lack of evidence that

Capatina's illness prevented him from being able to control his actions, we conclude that

the trial court did not abuse its discretion in determining that Capatina's mental illness

was not a mitigating circumstance.

---

[4] Notably, the evaluation was filed with the trial court and thus became a part of the Clerk's Record.
Pursuant to Indiana Appellate Rule 50(B)(1)(a), an appellant in a criminal appeal must include the Clerk's
Record in its Appendix on appeal.

Finally, Capatina argues that his prior criminal history is relatively minor and should have been a mitigating circumstance. Although a lack of criminal history may be considered a mitigating circumstance, "[t]rial courts are not required to give significant weight to a defendant's lack of criminal history," especially "when a defendant's record, while felony-free, is blemished." *Townsend v. State,* 860 N.E.2d 1268, 1272 (Ind. Ct. App. 2007) (quoting *Stout v. State,* 834 N.E.2d 707, 712 (Ind. Ct. App. 2005), *trans. denied*). "'In the non-capital context, a single conviction or juvenile adjudication may negate this mitigating circumstance [of lack of criminal history].'" *Id.* (quoting *Warlick v. State,* 772 N.E.2d 809, 813 (Ind. 2000)). Here, although Capatina does not have any prior felony convictions, he does have three misdemeanor convictions, including another charge involving a firearm, Class A misdemeanor pointing firearm at another person. Based on this history, we conclude that the trial court did not abuse its discretion when it did not find that Capatina's criminal history was a mitigating factor.

B. Inappropriate Sentence

Next, Capatina argues that the trial court's sentence is inappropriate in light of the nature of his offense and his character. He asks us to consider the totality of the circumstances when considering the nature of the offense, including his mental state and the fact that he never physically touched Officer Garrison's weapon. In addition, Capatina argues that his guilty plea and his remorse are evidence of good character that warrant a reduced sentence. In support of this argument, he notes that he apologized to Officer Garrison and the hospital staff for his actions and that he pled guilty without attempting to negotiate a plea agreement.

11

Pursuant to Appellate Rule 7(B), a reviewing court may revise a sentence if, "after due consideration of the trial court's decision," it finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Childress v. State*, 848 N.E.2d 1073, 1079-80 (Ind. 2006) (quoting Ind. App. R. 7(B)). Although this Court is not required to use "great restraint," we nevertheless exercise deference to a trial court's sentencing decision, both because the Appellate Rule 7(b) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State*, 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). The "principal role of appellate review should be to attempt to leaven the outliers and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). In addition, the defendant bears the burden of persuading this court that his sentence is inappropriate. *Childress*, 848 N.E.2d at 1080.

Although there is substantial evidence that Capatina's actions were influenced by his history of mental illness and mental state during the incident in question, we cannot agree that the nature of his offense was not serious. Capatina did not manage to reach Officer Garrison's weapon, but it is clear from the record that he put a significant amount of effort into doing so – to the point that Officer Garrison required the assistance of at least five other officers and nurses to subdue him. Also, Capatina's threats to Officer Garrison, including his statement "I'm going to get your gun and shoot myself," are

evidence that he intended to use Officer Garrison's firearm in a public facility and in the proximity of another person once he reached it.

With respect to his character, it is commendable that Capatina apologized to Officer Garrison and the hospital staff involved and accepted responsibility for his actions through a guilty plea. However, as stated above, his guilty plea has little significance in light of the overwhelming evidence against him. Instead, we find the trial court's sentence appropriate in light of other evidence of Capatina's character. Both before and during the incident in question, Capatina demonstrated a lack of regard for the safety of others and for the law. While Officer Foote was transporting him, Capatina threatened that "as soon as I'm out of these cuffs, I'm going to hurt who ever [sic] is around me and myself" and "you let me out of these handcuffs and it will be the last decision you make[.] I've shot someone before[,] and I beat it, just like I'll beat this." (Sentencing Tr.1 25). During Capatina's attempts to reach Officer Garrison's firearm, he also disregarded the risk to Officer Garrison's safety and the risk to the safety of the others that came to assist the officer.

In addition, while Capatina does not have an extensive criminal history, this is not his first violent offense. He has three prior misdemeanor convictions, including Class A misdemeanor battery resulting in bodily injury and Class A misdemeanor pointing firearm at another person, as well as pending charges in another cause. Based on the above circumstances, we conclude that the trial court's sentence was appropriate in light of the nature of Capatina's offense and his character.

13

Affirmed.

CRONE, J., and BARNES, J., concur.